Rudd, Ad., v. Peters et al.

RUDD, AD., v. PETERS ET AL.

41  177
56  221
56  382
41  177
75  132

1. WITNESS: *Married woman: Party in suit against administrator.*
   In an action against husband and wife in which she is the real party in interest, she is a competent witness for herself, and in a suit with an administrator may testify of transactions between herself and husband, to which the deceased was not a party.

2. HUSBAND AND WIFE: *Contracts between.*
   In equity a wife may deal with her separate property as a *femme sole*, and may contract with her husband in regard to it on fair terms.

3. SAME: *Effect of Act of 15th December, 1875.*
   The act of Dec. 15th, 1875, is for the protection of the wife's property against her husband's creditors, and means that he shall not acquire title by her permission to use, control and manage it, so as to make it liable to execution for his debts.

4. TRUSTEE. AGENT: *Their powers.*
   A trustee or agent to hold and control property can not bind the owner by contracts which may become liens upon it, unless such authority be express or arise within the scope of the agency.

5. HUSBAND AND WIFE: *Liability of wife for husband's contracts.*
   When a husband leases from his wife her separate property and places upon it an overseer who, by contract with the husband and without authority of the wife, makes repairs and improvements upon it, and furnishes goods and supplies, the husband is alone liable; and the taking of his note in a subsequent settlement for the amount of the debt is *prima facie* evidence of a settlement on the credit of the husband alone, and no liability attaches to her or her property because of the accrued betterment to it.

APPEAL from *Crittenden* Circuit Court in Chancery.
Hon. L. L. MACK, Judge of the Circuit Court.

*Wright, Folkes & Wright,* of Memphis, Tenn., for appellant.

1. The husband was the agent and trustee of the wife, in fact and in law, and the revenues, incomes and wages of her separate estate, are bound in equity to pay appellant the amount due him. *8 Ark., 366; 3 Ib., 21; 9 Ib., 202; 17 Ib., 154.* The possession of the husband was the possession of the wife. *6 Hums., 160; Wheeler on Slavery, 90.* Appellant, the value of whose services and property inured to the benefit of the wife's property, was entitled to compensation from her estate. *4 Heisk, 104; 4 Dessansure, 19, 591; 1 McCord, ch. 267; 1 Hill, Ch'y., (S. C.), 228; 32 Ark., 445; 34 N. Y., 293, 300; 55 Miss., 60; Const. Ark., Art. 12, sec. 6; Code, secs. 4193 to 4203.*

2. Whenever work, labor, services or money are done or furnished for the benefit or preservation of a trust estate, or to improve it, they must be paid for—contract or not. No one has a right to take a benefit and not pay for it. *2 McCord, ch. 82; 2 Ib., 264; 4 Heisk., 111; 1 Gill & J., 273; 2 Bibb, 597; 4 Hum., 362; 3 Head., 177; 5 Heisk., 541; 6 B. J. Lea, 652; 29 Ark., 346; Harden v. Green, 3 King's Dig., p. 69, sec. 7223; 1 Hill, Ch'y., 228.*

3. The leases from husband to wife were void. They were not recorded, and were kept secret, and would be a fraud on Doggett to allow them. *1 McCord, Ch'y., 267; Meig's Rep., 502; 9 Reporter, 244–5; 55 Miss., 63; 55 Penn. St., 437.* No trustee can lease from a *cestui que* trust, and certainly not a trustee husband from the wife. Husband and wife cannot contract with each other. *31*

*Ark.*, *678*; *30 Ib.*, *17*; *8 Ib.*, *366*; *14 Barbour*, *531*; *34 N. Y.*, *293*.

4. The wife cannot lease or convey any interest in her real estate except by joining her husband in a conveyance, *&c. Code, sec. 838, 839, 849.* Nor can wife convey to husband under these statutes. *14 Barbour*, *531*; *34 N. Y.*, *293.* The conveyance and registry laws include leases. *Code, sec. 835.* And leases she cannot make without following the statute. *15 Ark.*, *465*; *29 Ib.*, *346*; *Ib.*, *650*; *30 Ark.*, *385, 393*; see also *Const.*, *Art. 12, sec. 6*; *1 Head.*, *90*; *Code, sec's. 4192, 4201.* She may sell her *personalty* as a *femme sole*, but not her *realty.* *Sec. 4194.* But to sell or lease land must follow the statute code. *Sec's. 838-9-49*; *29 Ark.*, *346, 354*; *31 Ib.*, *678*; *14 Barb.*, *531*; *34 N. Y.*, *293.*

5. The laborer's lein law is not applicable to this case. *Code, sec's. 4079 to 4097*; *27 Ark.*, *564*; *29 Ib.*, *597.*

6. The taking of the note of the husband was merely an ascertainment or memorandum of the amount due, and did not extinguish or merge Doggett's claim or equitable lien. *2 Tenn.*, *ch. 633, 483*; *2 Swan, 632*; *2 Lomax on Exrs.*, *477*; *2 McCord, Ch'y.*, *105*; *32 Ark.*, *733*; *2 Hager*, *N. C.*, *397*; *Story on Notes, sec's.*, *403 to 409*; *14 Johns.*, *404*; *6 Cranch, 253*; *9 Cowen, 37*; *8 Ark.*, *213*; *8 Cowen, 77.*

7. Mrs. Peters' testimony not competent. *Const. Ark.*, *sec. 22*; *Code, sec., 2482, sub-sec. 6*; *11 Hum.*, *565*; *29 Ark.*, *603*; *31 Ark.*, *688.*

*Finley & Peters*, of Memphis, for appellees.

1. The note given by the husband was a merger and extinguishment of all claims, demands and causes of action. *9 Ark.*, *339*; *5 Ib.*, *558*; *28 Ib.*, *66*; *2 Maine, 125*; *1 Nason*, *(Ct. Ct.) 483*; *5 Cush., 159.* It was given and accepted and intended to be such.

2.   There is no proof of the agency or trusteeship of the husband for the wife, and such an agency or trusteeship so as to bind the separate estate of the wife, must be established by strong and convincing proof.  *1 Bish. Mar. Wom., sec's. 395-6-7; 26 Iowa, 297; 17 N. J. Ch., (2 Greene) 234; 44 Ind., 291; 30 La. Am., 1106; 63 N. Y., 613; 3 Lansing (N. Y.) 116; 22 N. J., (7 Greene) 599; 46 Iowa, 698; 33 Iowa, 225; 51 Ind., 295; 61 Mo., 578; 28 Wis., 38; 23 Tex., 194; 69 Mo. 563; Ch. 91, Acts 1879.*

3.   The lease from the wife to husband valid.   Husband and wife can contract with each other in equity, and as to her seperate estate is treated as a *femme sole.  23 Ark., 508; 50 Ala., 182; 2 John. Ch'y., 537; Story Eq. Jur., sec. 1368-1396; 5 Heiskell, (Tenn.) 10; 2 Lea, (Tenn.) 661; 9 Kans., 466; 9 Humph., 477; 55 Ga., 334; 52 Tex., 294; 48 Md., 440; Bishop Mar. Women, sec's. 818-20; 11 Otto, (U. S.), 240; 54 Miss., 485; 34 Mich., 342; 39 N. H., 197.*

When the wife is the real party at interest, she may testify in her own behalf, notwithstanding the husband is a party. *33 Ark.. 614; 2 Lea, 101; 39 N. J. Law, 710;* and these transactions were not with decedent.  *30 Ark., 295,* And even if the lease be void, her separate estate cannot be charged, unless a contract be shown for the benefit of herself or her separate estate, and nothing short of *a contract made by the wife herself,* or her properly authorized agent, can create a charge on her separate estate.  *17 Ark., 189; 29 Id., 347; Id., 444; 32 Id., 446; 33 Id., 265; 34 Id., 17; 32 Ala., 489; 17 N. J., 234; 67 Ala., 589; 56 Ga., 47; 48 Ib., 86; 10 Hum., 556; 38 Ind., 479; 51 Ib., 295; 43 Wis., 557; 51 Mo., 156; 46 Md., 349; 3 Head., 542; 12 B. Mon., 90; 55 Penn. St., 396; 63 N. Y., 613; Story, Eq. Jur., sec. 1397-1402; Adams Eq., marg. p. 46 and notes, &c.*

## STATEMENT.

EAKIN, J.   This is a suit in equity, begun by Doggett in his lifetime, against Mrs. Peters and her husband, she being the substantial defendant.   It seeks to subject her sole and separate property in a Mississippi river plantation, to the payment of a debt to complainant, for services as overseer of the plantation during the years of 1874, 1875 and 1876, and also for some horses sold by complainant, and an interest in a stock of goods kept for sale on the plantation, and which he also sold.   The questions really are, to whom was this property sold by complainant? and for whom were the services rendered? and if for Mrs. Peters, is her separate estate liable? and how?

All the contracts and transactions had been between the complainant and Geo. B. Peters, the husband.   Mrs. Peters, personally, did not live upon the plantation and had nothing to do with the contracts or management.

The bill proceeds upon the theory that Geo. B. Peters must be held to have acted throughout as the agent of his wife, inasmuch as it was matter of record that the plantation was hers ; and that the services of complainant had enured to the betterment of the property, by new cabins, new fences, ditches cut and clearings made.   As to the personal property, the theory of the bill is that the benefit of the purchase went to the wife, as it increased the amount of her separate live stock on the plantation, and because plantation operations were facilitated by the stock of goods.

In the month of January, 1877, Geo. B. Peters and complainant had a settlement together, including all of these matters, upon which Peters gave to complainant his individual note for $3,775, due one day after date, from the first of January.   Complainant says that this was only a memorandum of the amount, and was not intended as a satisfaction of any claim against the wife, or a release of

her property, or as a recognition of Peters as the principal debtor. Peters filed a petition in bankruptcy on the 9th of January, 1878, and was discharged on the 24th day of January, 1879. This suit was begun on the 22d day of December, 1879.

Defendants answered separately, but with the same import. Both deny positively that Mrs. Peters had any agency in making the contracts, or that she authorized her husband to make them, or interfered in any manner; or that she obtained any other benefit from the plantation than an annual rent contracted beforehand to be paid her by her husband, and actually paid. They say that the husband was in possession and control, and was operating and contracting solely for his own benefit.

Complainant offered no other proof than the note. Defendants took the deposition of Mrs. Peters, which showed that she had rented the plantation to her husband by joint articles in writing, each year, which she exhibits— testifying, further, that she neither assumed any control of the business, nor authorized her husband to act as her agent. She made short visits there occasionally, but during her stay did little else but eat, sleep and read. The complainant excepted to her testimony on several grounds, principally because of the marital relation; and also because, when taken, the original complainant was dead, and his administrator had been substituted. The record does not show, clearly, the ruling of the chancellor on the exceptions. But the bill was dismissed on final hearing for want of equity, shown in the pleadings and proof. The complainant appealed.

### OPINION.

1. WIT-
NESS:
Mar-
ried wo-
man. Par-
ty in suit
against
adminis-
trator.

First, as to Mrs. Peters' testimony. She was the real defendant. Her interests alone were assailed by the suit; for after his discharge in bankruptcy the husband was not.

Rudd, Ad., v. Peters et al.

liable in person or property. She was testifying for herself, against a stranger, and no policy of law springing from the marital relations had any application.

At the time of her deposition the suit stood in the name of the administrator of the original plaintiff. She could not have testified under the statute as to transactions between herself and Doggett. But that did not preclude her from showing that she had leased to her husband, had put the plantation under his sole control, had claimed only stipulated rent, and that he cultivated for his own benefit and made his own contracts, without any authority from her to employ anybody, or to make any contracts binding her property.

It is now too well settled to admit of further discussion that, in equity, with regard to her separate estate, a wife may contract with her husband on fair terms. The unquestioned English doctrine, which, in so far as it is not controlled by statute, we have adopted in this State is, that she may deal with it as a *femme sole*. At the time of the transactions in question there were restrictions upon her powers of *alienation* of real estate. They required the concurrence of her husband in a deed, and a privy examination as to her free will. But these restrictions had no application to annual renting, which need not be in writing at all. She might of her own will, have put a stranger in for a year. She certainly would not have been bound by his contracts for an overseer, even although that overseer should have improved her lands whilst working under a contract for wages. It would be unjust and unreasonable to preclude her from giving her husband the same advantage as a renter, without jeopardizing her estate. We can conceive no reason, nor principle, for denying her power to rent to her husband, or to prove by her own oath that she had done so. Regarding, then, either her capacity, or the subject matter, her testimony was admissible.

2. HUS- BAND AND WIFE: Contracts between.

Rudd, Ad., v. Peters et al.

3. Effect of act of Dec. 15, 1875.   The fourth section of the act of Dec. 15th, 1875, provides that "the fact that a married woman permits her husband to have the custody, control and management of her separate property, shall not, of itself, be sufficient evidence that she has relinquished her title to said property ; but in such case, the presumption shall be that the husband is acting as the agent or trustee of the wife," which presumption may be rebutted. The whole act is for the protection of the woman's property against her husband's creditors, and the evident meaning of this section is, that the husband shall not be considered to have acquired *title* by his wife's permission, so as to make the property liable to execution ; in short to provide that the property shall remain her's nevertheless.

If it were necessary, it would be important, too, to enquire whether the legislature had any other than the personal property in view. But the act can have no application to show that when the contract for services was made in 1874, Doggett might lawfully conceive himself contracting with Mrs. Peters through her agent. The act had not then been passed.

4. TRUSTEE, AGENT: Their powers.   Nor does it follow because one is a trustee, or agent to hold and control property, he is authorized to bind the owner with contracts which may become liens upon it. Such powers must be express, or must be shown to arise within the scope of the agency. An overseer, for instance, is an agent to control a plantation, but he could not bind the real estate by contract, or even its crops, without more authority than arises from his agency.

5. Wife's liability for husband's contracts.   The case of *Bank of America v. Banks, U. S. Rep., S. C., (11 Otto) vol. 101, p. 240,* becomes then in point. That case went up from Mississippi where a statute provided that a married woman might rent her lands ; and was a case like this, where she had rented to her husband. He made contracts for supplies, &c., and it was sought, as here, to

Rudd, Ad., v. Peters et al.

make her liable on the ground of her husband's agency. The proof was that he was cultivating the plantation on his own account under a verbal lease from her. The Mississippi statute had provided "that all contracts made by the husband and wife, or *by either of them*, to obtain supplies for the plantation of the wife, may be enforced, and *satisfaction secured out of her separate estate*." That made a a much stronger case than this, where we have no statute. Yet it was held not to apply where the husband was cultivating the land on his own account. Mr. Justice Clifford, delivering the opinion, said: "Leased premises cultivated by the husband, in his own name, and for his own benefit, are not plantations of the wife," in the sense of the statute, "nor," he adds, "is the contract in this case one made by the husband with the consent of the wife, which may also be satisfied out of her separate property." The proof had failed to show such assent. It was also held to be matter of indifference that the creditor did not know that the husband was cultivating his wife's property under a lease. · It would only show that the creditor had acted improvidently and without due caution.

In truth, the testimony of the wife in this case was superfluous. · The transactions had been wholly between Doggett, and the husband in his own name, and had been closed by taking the husband's own note. This, *prima facie*, was a settlement on the credit of the husband alone, without any contemplation of the wife's liability. After the issues made by the answers, the onus was on the complainant to show affirmatively, if it might be done at all, that the note was intended as a mere memorandum of amount, and that the wife was originally liable in her estate. That could not be inferred from the admission that the plantation was her separate estate.

Her liability cannot be sustained on the grounds, that the labors of complainant enured to the betterment of the plan-

*Taking note prima facie evidence of settlement.*

tation. She did not contract for them. Nor did the com-
plainant make the betterments upon any expectation of being
remunerated, *quantum meruit.* He was working on wages to
be paid by the husband, and if any one could have the right
to a lien for improvements, it would be the husband him-
self, and he certainly has not. If he chose to put his hired
employe to improving his wife's plantation, it was matter
of grace, which did not concern the employe at all. The
latter could look only for wages, and to the person who con-
tracted to pay them. With regard to the personal property
sold to the husband, there was nothing to prevent him from
letting them go into the mass of the separate property of
the wife, after they had become his by purchase, if it were
even clear that he had done so, which is not.

The chancellor was doubtless satisfied, as we are, that the
original credit was given to the husband alone, without the
wife's concurrence or agency. It is a hardship that he lost
the debt by the husband's bankruptcy, but it is not an unu-
sual misfortune, and chancery will not aid by granting relief
against others, not liable.

We find no error. Affirm.