# TEXAS & PACIFIC RAILWAY COMPANY *v.* HUMBLE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 177.   Argued March 7, 8, 1901. — Decided April 8, 1901.

Where a married woman had resided in Arkansas for many years, and, just as she was leaving the State to join her husband, who had taken up his residence in Louisiana, was injured through the alleged negligence of the defendant railway company, and brought an action to recover damages in a state court in Arkansas, which, on the application of the company, was removed into the Circuit Court of the United States for the Western District of Arkansas, the rule of decision was the law of Arkansas, the place of the wrong, and of the forum, and not the law of Louisiana.

By the law of Arkansas, plaintiff was entitled to bring the action in her own name and without joining her husband.   And if her husband should subsequently bring suit in Louisiana on the same cause of action, it is not to be assumed that the courts of that State would not recognize the binding force of the judgment in Arkansas.

By the legislation of Arkansas the earnings of a married woman arising from labor or services done and performed on her sole account are her separate property, and although the statutes may not have deprived the husband of the services of the wife in the household, in the care of the family, or in and about his business, they have bestowed on her, independently of him, her earnings on her own account, and given her authority to acquire them.

As the evidence in this case tended to show that plaintiff for some years had been carrying on business on her own account, which had been suspended by reason of temporary illness for a short time just previous to the accident, the Circuit Court did not commit reversible error in instructing the jury that, if they found for the plaintiff, they might take into consideration in assessing her damages, among other things, her age and earning capacity before and after the injury was received, as shown by the proofs.

On this record the earning capacity referred to presumably had relation to earnings on plaintiff's own account, and if defendant wished this made more explicit, it should have so requested.

THIS was an action brought by Emma Humble against the Texas and Pacific Railway Company in the circuit court of Miller County, Arkansas, to recover compensation for personal injuries sustained by her in the defendant's station at Texarkana, Arkansas, on April 9, 1898, by reason of defendant's negligence, and removed on defendant's petition to the

United States Circuit Court for the Western District of Arkansas. Plaintiff obtained judgment, which was affirmed by the Circuit Court of Appeals for the Eighth Circuit, 97 Fed. Rep. 837, and thereupon this writ of error was sued out.

The evidence, in addition to establishing the circumstances of the infliction of the injury, tended to show that Mrs. Humble had been a resident of Arkansas for nearly ten years; that she had kept a boarding house, and a hotel at Pine Bluff, in said State, for some years, conducted by her as her sole and separate business, and in her name, until she left Pine Bluff for Texarkana, in October, 1897, where she remained until April 9, 1898, and during this time began to run a hotel, but became temporarily ill, and gave it up. Her husband had taken up his residence in Louisiana at the time of the injury, and she had then started to go to him.

Prior to the trial, the railway company moved the court to compel Mrs. Humble to make her husband a party plaintiff, but the court overruled the motion, and defendant excepted. Defendant objected to all evidence tending to show that plaintiff's capacity to labor was diminished by the injury, and saved an exception to its admission.

At the close of the evidence defendant requested the court to give the jury certain instructions, of which the third, fourth, sixth and seventh are as follows:

"3. The plaintiff cannot recover any damages on account of her injury diminishing her capacity to labor and earn money, because there is no evidence showing any capacity to labor or earn money at and just before she was injured.

"4. In this case the plaintiff being a married woman and her husband not joining in the suit, she cannot recover any damages on account of her diminished capacity to labor and earn money.

"6. The plaintiff being a married woman, and her husband not having joined her in this suit, and she and her husband having her present and prospective home in the State of Louisiana, then the law of Louisiana would apply as to the right to recover damages by reason of the fact that plaintiff's capacity to labor in future has been lessened by the injury, and by the law of that State she cannot recover such damages.

"You will, therefore, allow nothing as damages for any diminished capacity to labor and earn money.

"7. Plaintiff cannot recover anything on account of her diminished capacity to labor.

"Because there is neither pleading nor evidence showing that plaintiff was engaged in any business, profession or occupation.

"And her lessened capacity to perform household duties cannot be the basis of plaintiff's recovery."

The court declined to give these instructions, and each of them, and the defendant excepted to the refusal of each.

The court instructed the jury as follows: "If you should find for the plaintiff, in assessing her damages you will take into consideration her age and earning capacity before and after the injury was received, as shown by the proofs, her physical condition before the injury, and her physical condition after the injury, and the nature and character of the injury she received, whether it be permanent or temporary in its nature, and find for her such sum as will fairly and reasonably compensate her therefor, including therein fair and reasonable compensation for any physical and personal pain and suffering she may have undergone as the result thereof."

Defendant excepted to so much of this portion of the charge as allowed the jury to "take into consideration her age and earning capacity before and after the injury was received as shown by the proofs."

*Mr. John F. Dillon* for plaintiff in error. *Mr. Winslow F. Pierce* and *Mr. David D. Duncan* were on his brief.

*Mr. Oscar D. Scott* for defendant in error.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Plaintiff in error contends that the judgment should be reversed because the Circuit Court erred in declining to direct the joinder of the husband; in applying the law of Arkansas in the trial of the case and not that of Louisiana; and in allowing impaired earning power to be considered as an element of recovery.

The statutes of Arkansas provided- that a married women " might maintain an action in her own name for or on account of her sole or separate estate or property, or for damages against any person or body corporate for any injury to her person, character or property." S. & H. Dig. § 5641.

This action was brought in the state court and removed on defendant's application. That transfer could not deprive plaintiff of the right secured to her by the local law to prosecute the suit in her own name and for her own benefit; and indeed by section 721 of the Revised Statutes, the law of Arkansas furnished the rule of decision. In some jurisdictions it is held under similar statutes that the wife *must* sue alone under such circumstances, and that to make the husband a co-plaintiff works a fatal misjoinder. The Circuit Court was right then in not attempting to compel a joinder which the statute had expressly dispensed with.

But it is said that under the laws of Louisiana compensation for personal injuries to a married woman belongs to the husband; that he alone can sue therefor; and that, therefore, error was committed in the admission of evidence, the refusal of instructions, and in the charge of the court. We do not think the point as now presented was made below. The objection to evidence, the sixth instruction refused, (which referred to the law of Louisiana,) and the part of the charge excepted to, related to diminished capacity to labor. And the motion as to Humble was that he should be joined as a plaintiff. The answer simply raised the issue whether or not Mrs. Humble received any injuries to her person by reason of the acts complained of. It was nowhere insisted that the action could not be maintained because not brought by the husband alone.

However, whether the objection be that under the laws of Louisiana she could not recover in her own name at all, or could not, except her husband was a co-plaintiff, because the damages claimed were community property, we agree with the Circuit Court of Appeals that plaintiff's rights in suing in Arkansas for an injury sustained there did not differ from those of any married woman domiciled in that State; that the legislature of Arkansas had determined by whom a suit might be brought for per-

sonal injuries sustained by a married woman; had enlarged the rights of married women in respect of damages recoverable by them on account of personal injuries sustained within the State; and that these laws necessarily enured to the benefit of every married woman who subsequently sued in the courts of the State for personal injuries there sustained, and must be held to have been intended to have, and to have, a uniform operation throughout the State.

The argument *ab inconvenienti* is pressed, that Humble might sue for the same injury in Louisiana, and that this judgment could not be pleaded in bar, although only covering damages particularly pertaining to the wife. In other words, that the Louisiana courts would decline to give any faith and credit to the recovery in Arkansas permitted by the jurisprudence of the latter State in the name of the wife only. We must decline to be moved by the supposed hardship suggested. These injuries were inflicted and this action was brought in the State of Arkansas. The place of the wrong and the place of the forum concurred, and the law of that place governed. If an action should be brought in Louisiana, the fact that the law of Arkansas differed from that of Louisiana would not prevent its application unless opposed to some general public policy, the existence of which is not to be assumed. *Northern Pacific Railroad Company* v. *Babcock*, 154 U. S. 190.

This brings to us the point on which the chief stress of the argument was laid. The Circuit Court charged the jury that if they found for plaintiff they might take into consideration in assessing the damages " her age and earning capacity before and after the injury was received, as shown by the proofs," and refused an instruction to the contrary, and exceptions were duly preserved.

In view of the evidence was plaintiff entitled to be allowed anything for diminution of earning capacity?

Section 7 of Article 9 of the constitution of Arkansas provides:

" The real and personal property of any *feme covert* in this State acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may

choose, be and remain her separate estate and property and may be devised, bequeathed or conveyed by her the same as if she were a *feme sole*, and the same shall not be subject to the debts of her husband."

Sections 4940, 4945, 4946, 4949 and 5641 of Sandels & Hill's Digest of the Statutes of Arkansas are as follows:

4940. "The real and personal property of any *feme covert* in this State, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed or conveyed by her the same as if she were a *feme sole*; and the same shall not be subject to the debts of her husband."

4945. "The property, both real and personal, which any married woman now owns, or has had conveyed to her by any person in good faith and without prejudice to existing creditors, or which she may have acquired as her sole and separate property; that which comes to her by gift, bequest, descent, grant or conveyance from any person; that which she has acquired by her trade, business, labor or services carried on or performed on her sole or separate account; that which a married woman in this State holds or owns at the time of her marriage, and the rents, issues and proceeds of all such property shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested by her, in her own name, and shall not be subject to the interference or control of her husband or liable for his debts, except such debts as may have been contracted for the support of herself or her children by her as his agent."

4946. "A married woman may bargain, sell, assign and transfer her separate personal property, and carry on any trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman, from her trade, business, labor or services, shall be her sole and separate property, and may be used or invested by her in her own name; and she may alone sue or be sued in the courts of this State on account of the said property, business or services."

4949. "In an action brought or defended by any married

woman, in her name, her husband shall not, neither shall his property, be liable for the costs thereof, or the recovery therein. In an action brought by her for an injury to her person, character or property, if judgment shall pass against her for costs, the court in which the action is pending shall have jurisdiction to enforce payment of such judgment out of her separate estate or property."

5641. "Where a married woman is a party, her husband must be joined with her, except in the following cases:

"*First.* She may be sued alone upon contracts made by her in respect to her sole and separate property, or in respect to any trade or business carried on by her under any statute of this State.

"*Second.* She may maintain an action in her own name for or on account of her sole or separate estate or property, or for damages against any person or body corporate for any injury to her person, character or property.

"*Third.* Where the action is between herself and her husband she may sue and be sued alone."

The particular point before us may not have been passed on by the Supreme Court of Arkansas, but that tribunal has recognized this legislation as intended for the protection of the wife's property against the husband's creditors, and has held that the earnings of a married woman arising from labor or services done and performed on her sole account become her separate property. *Sellmeyer* v. *Welch,* 47 Ark. 485; *Rudd* v. *Peters,* 41 Ark. 177; *Hoffman* v. *McFadden,* 56 Ark. 217.

Granting that the statutes have not deprived the husband of the services of the wife in the household, in the care of the family, or in and about his business, yet they have bestowed on her, independent of him, her earnings on her own account, and given her authority to acquire them. They proceed upon the difference between the discharge of marital duties and independent labor.

As the results of her earning capacity when exerted for herself belong to her, deprivation of that capacity must be to that extent her individual loss. The husband may recover for loss of services belonging to him, but not for loss of the wife's poten-

tiality to earn for herself, nor for her expectation of life in that connection ; and if he cannot, she can.

The precise question arose under statutory provisions not materially different from those in Arkansas in *Harmon* v. *Old Colony Railroad Company*, 165 Mass. 100, and it was decided that in an action by a married woman to recover damages for a personal injury, the impairment of her capacity to perform labor might be considered as an element of the damages. The reasoning of the opinion seems to us so convincing that we quote from it at length.

The Supreme Judicial Court, after referring to the statutes of 1846, 1855, 1857 and 1874, said :

"By virtue of this legislation, a married woman becomes, in the view of the law, a distinct and independent person from her husband, not only in respect to her right to own property, but also in respect to her right to use her time for the purpose of earning money on her sole and separate account. She may perform labor, and is entitled to her wages or earnings. If she complies with the statutory requirement as to recording a certificate, she may carry on any trade or business on her sole and separate account, and take the profits, if profits there are, as her separate property. Her right to enter into contracts, to earn money, to engage in performing labor or service, to enter into trade on her own account, is inconsistent with the view that her capacity to labor belongs exclusively to her husband. He can appropriate neither her earnings nor her time. Her right to employ her time for the earning of money on her own account is as complete as his; subject to the requirement of recording a certificate in case she enters into trade. This may interfere with his right to and enjoyment of her society and services. But this is a consequence which the legislature must be deemed to have foreseen and intended. His right in these respects is now made subordinate to her right to employ her time in the care and management of her property, and in the earning of money by performing labor or by carrying on a trade or business. So far as the statutes have given to her the right to act independently of him, so far his rights and control in respect to her are necessarily abridged. He can no longer compel her to work for him

during such time as she may choose to perform labor on her sole and separate account. By the common law, the husband was bound to support his wife, and therefore was entitled to her services. By the statutes, which modified the common law, his right to her services is abridged, though his obligation to support her remains. It is urged in argument that she may contract to devote her whole time to work which is to be performed away from his home, and which perhaps may require her absence for ten years, thus amounting to a desertion, which would be in violation of her matrimonial duties. But the possibility of extreme cases should not conclusively determine the construction of statutes, nor do we now decide whether the statutes would permit such action on her part against his consent. To a certain limited extent, as, for example, in fixing the domicil, and in being responsible under ordinary circumstances for its orderly management, the husband is still the head of the family. But in some particulars a married woman is now independent of her husband's control. In the case now before us, the impairment of the plaintiff's capacity to labor was an element which might be considered by the jury in the estimate of her damages. In respect of this, as with other elements of damages, no close approximation to mathematical accuracy can in all cases be reached. In some instances, the right of a married woman to perform labor for others may have no money value. How much, if anything, should be allowed on this ground, must be left to the jury to determine, under the circumstances of each particular case."

Counsel for plaintiff in error earnestly urges, however, that the Arkansas statute was adopted in 1873, and was nearly identical with an act of New York of 1860; that a different construction had been put on that act by the courts of New York; and that this construction should be followed in the present instance. But the statutes of Massachusetts, in the particulars material here, were in force long prior to 1873, and we are not advised that the statutes of Arkansas were transcribed from the statute book of New York rather than from that of some other State. We do not regard this as a case for the adoption of a construction by presumption. Nor need it be conceded that the deci-

sions of the courts of New York are opposed to the rulings of the Circuit Court on the facts of this case.

In *Filer* v. *New York Central Railroad Company*, 49 N. Y. 47, the decision was that unless the wife was actually engaged in some business or service in which she would, but for the injury, have earned something for her separate benefit, and which she had lost by reason of the injury, she had sustained no consequential damages.

In *Brooks* v. *Schwerin*, 54 N. Y. 443, there was evidence that the plaintiff before the injury took care of her family and, also, that she was working out by the day and earning ten shillings a day. To proof of these facts defendant objected on the ground that her time and services belonged to her husband, and could not form ground of damages in the action. The court overruled the objection and defendant excepted. The defendant also excepted to the refusal of the court to charge as requested by him, " that the plaintiff cannot recover for the value of her time and services while she was disabled ; such services and time belong, in law, to the husband." It was held that the rulings of the court were proper, and Earl, C., said :

" If the defendant had requested the court to charge that the plaintiff could not recover for the loss of services to her husband in his household in the discharge of her domestic duties, the request could not properly have been refused. But the request was broader, and proceeded upon the idea that all her time and services belonged to her husband, and that she could not recover anything for the value of her time, or for the loss of any service while she was disabled. She was earning in an humble capacity ten shillings a day, and so far as she was disabled to earn this sum, the loss was hers, and the jury had the right to take it into account in estimating her damages."

In *Blaechinska* v. *Howard Mission*, 130 N. Y. 497, it was ruled that recovery could not be had by a married woman, in an action to recover damages for injuries sustained through defendant's negligence, for loss of her services in the discharge of household duties, and of other services rendered by her to her husband, and *Brooks* v. *Schwerin* was distinguished, because in

that case the wife worked for a stranger, while in this she worked for her husband.

In the present case the evidence tended to show that before the plaintiff was injured she had been engaged for some years in business on her own account, supporting herself and her children, which business had been discontinued for a few months, was renewed, and then given up on account of temporary illness, from which she had in substance recovered, when the injuries sustained incapacitated her from further work.

Under these circumstances we think the Circuit Court did not err in refusing to charge that plaintiff could not recover for diminished capacity to labor because there was " no evidence showing any capacity to labor or earn money at and just before she was injured." .To pin the evidence of capacity down to the very point of time when the injury was inflicted upon her was refining too much on the principle involved.

This loss of ability to make earnings outside the discharge of household duties and irrespective of her husband was under the statutes of Arkansas her loss, and not her husband's, and the mere fact that at the moment of the injury she happened to be out of business should not deprive her of the benefit of the rule which would have been otherwise applicable, according to *Filer* v. *Railroad Company* and *Brooks* v. *Schwerin.*

We have assumed, as the jury presumably did, that the earning capacity referred to in the charge had relation to earnings on plaintiff's own account, and if defendant wished this to have been made more explicit, it should have so requested. .

The third paragraph of the seventh instruction refused was, " And her lessened capacity to. perform household duties cannot be the basis of plaintiff's recovery." But this was not asked as an independent proposition, and the exception was saved to the refusal to give the entire instruction, which as a whole was erroneous and properly refused.

We find no reversible error, and the judgment is

*Affirmed.*