The plaintiff, a married woman, domiciled in the state of Texas, brought this suit on a cause of action arising in tort in the state of Louisiana, claiming damages as follows:
Pain and suffering $3,000.00 For disfigurement of arm 2,500.00 For impairment of physical function of arm $5,000.00
Defendant filed an exception of no right of action which was sustained by the court below and plaintiff is prosecuting this appeal.
The theory of the exception of no right of action is that an action in damages is a personal right and attached to the person and follows her to her domicile, in this case the state of Texas, and that in Texas all the items of damage claimed would fall into the community. For the purpose of determining the question of no right of action, the following stipulation was made: "It is hereby stipulated between counsel of the respective parties to this action that for the purpose of determining the exception of no right of action filed herein by the defendants, the items of damage claimed by the plaintiff herein, under the laws of Texas, would belong to the community in Texas and in an action in the courts of Texas, could be sued for by the husband in his name only."
Under the authority of the case of Williams v. Pope Manufacturing Company, 52 La.Ann. 1417, 27 So. 851, 50 L.R.A. 816, 78 Am.St.Rep. 390, the lower court sustained the exception.
This case presents a question requiring application of the law relative to conflict of laws. Our state Supreme Court, in the case of Williams v. Pope Manufacturing Company, supra, laid down a rule which is correctly reflected by the syllabus of the case, to-wit: "A claim for damages ex delicto arising from a tort or trespass upon the person of a married woman while temporarily sojourning in the state of Louisiana, whose matrimonial domicile and residence were in the state of Mississippi, cannot be considered as property acquired in the former state, in the sense of its community statute; and, being completely and fully capacitated, under the statute law of Mississippi, to institute suit, and stand in judgment therefor in the courts of that state, she has like capacity to sue in her own name in a Louisiana court."
The identical case as is now presented was presented there only in reverse. At the time of the above-cited case the law of Louisiana was that a married woman could not sue for torts committed on her, such an action belonged to the community of acquets and gains and suit for such torts had to be brought by the husband who was head and master of the community. The above decision has never been overruled, so far as our search reveals.
The Supreme Court of the United States in the cases of, Texas 
P.R. Company v. Humble, 181 U.S. 57, 21 S.Ct. 526, 45 L.Ed. 747; Northern Pac. R. Company v. Babcock, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 958; and the Federal Court of Appeal in the case of, Traglio v. Harris, 9 Cir., 104 F.2d 439, 127 A.L.R. 803, in which case a writ was refused by the Supreme Court (308 U.S. 629, 60 S.Ct. 125, 84 L.Ed. 524), has laid down a rule which is directly in conflict with that of the case of Williams v. Pope Manufacturing Company, supra.
In Texas P. Ry. Company v. Humble, the Supreme Court of the United States, through Chief Justice Fuller, said [181 U.S. 57, 21 S.Ct. 527, 45 L.Ed. 747]:
"Plaintiff in error contends that the judgment should be reversed because the circuit court erred in declining to direct the joinder of the husband; in applying the law of Arkansas in the trial of the case, and not that of Louisiana; and in allowing impaired earning power to be considered as an element of recovery.
"The statutes of Arkansas provided that a married woman might `maintain an action in her own name for or on account of her sole or separate estate or property, or for damages against any person or body corporate for any injury to her person, character, or property.' Sandels Hill's Dig. § 5641.
"This action was brought in the state court, and removed on defendant's application. That transfer could not deprive plaintiff of the right secured to her by the local law to prosecute the suit in her own name and for her own benefit; and indeed by § 721 of the Revised Statutes, the law of Arkansas furnished the rule of decision. In some jurisdictions it is held under similar statutes that the wife must sue alone under such circumstances, and that to make the husband a co-plaintiff works a fatal misjoinder. The circuit court was right, then, in not attempting to compel a *Page 251 
joinder which the statute had expressly dispensed with.
"But it is said that under the laws of Louisiana compensation for personal injuries to a married woman belongs to the husband; that he alone can sue therefor; and that, therefore, error was committed in the admission of evidence, the refusal of instructions, and in the charge of the court. We do not think the point as now presented was made below. The objection to evidence, the sixth instruction refused (which referred to the law of Louisiana), and the part of the charge excepted to, related to diminished capacity to labor. And the motion as to Humble was that he should be joined as a plaintiff. The answer simply raised the issue whether or not Mrs. Humble received any injuries to her person by reason of the acts complained of. It was nowhere insisted that the action could not be maintained because not brought by the husband alone.
"However, whether the objection be that under the laws of Louisiana she could not recover in her own name at all, or could not, except her husband was a coplaintiff, because the damages claimed were community property, we agree with the circuit court of appeals that plaintiff's rights in suing in Arkansas for an injury sustained there did not differ from those of any married woman domiciled in that state; that the legislature of Arkansas had determined by whom a suit might be brought for personal injuries sustained by a married woman; had enlarged the rights of married women in respect of damages recoverable by them on account of personal injuries sustained within the state; and that these laws necessarily inured to the benefit of every married woman who subsequently sued in the courts of the state for personal injuries there sustained, and must be held to have been intended to have, and to have, a uniform operation throughout the state.
"The argument ab inconvenienti is pressed that Humble might sue for the same injury in Louisiana, and that this judgment could not be pleaded in bar, although only covering damages particularly pertaining to the wife. In other words, that the Louisiana courts would decline to give any faith and credit to the recovery in Arkansas permitted by the jurisprudence of the latter state in the name of the wife only. We must decline to be moved by the supposed hardship suggested. These injuries were inflicted and this action was brought in the state of Arkansas. The place of the wrong and the place of the forum concurred, and the law of that place governed. If an action should be brought in Louisiana, the fact that the law of Arkansas differed from that of Louisiana would not prevent its application, unless opposed to some general public policy, the existence of which is not to be assumed. Northern P.R. Co. v. Babcock, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 958."
In Northern Pacific R. Company v. Babcock, supra, the Supreme Court, with Mr. Justice White as its organ, said [154 U.S. 190, 14 S.Ct. 980, 38 L.Ed. 958]: "`The statute of another state has, of course, no extraterritorial force, but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. In such cases the law of the place where the right was acquired, or the liability was incurred, will govern as to the right of action; while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought. And we think the principle is the same whether the right of action be ex contractu or ex delicto. * * *'"
And in Traglio v. Harris, supra, the Circuit Court of Appeal, Ninth Circuit, of date June 9, 1939 (writ refused), the court had the identical question before it as is presented in the case at bar. Appellee in that case was a resident of California and was injured in an automobile accident in the state of Oregon. She instituted suit in Oregon and, in part, the court said [104 F.2d 441, 127 A.L.R. 803]:
"Appellants contend that we must look to the law of California to determine who owns the cause of action. Exactly in point, as to both propositions last mentioned, is Texas P. Ry. Co. v. Humble, 181 U.S. 57, 21 S.Ct. 526, 45 L.Ed. 747, where a married woman in Arkansas was traveling there on a journey to her husband domiciled in Louisiana, and was injured in Arkansas. The court said, 181 U.S. at page 60, 21 S.Ct. at page 528, 45 L.Ed. 747:
"`But it is said that under the laws of Louisiana compensation for personal injuries to a married woman belongs to the husband; that he alone can sue therefor. * * *
"`However, whether the objection be that under the laws of Louisiana she could *Page 252 
not recover in her own name at all, or could not, except her husband was a co-plaintiff, because the damages claimed were community property, we agree with the circuit court of appeals that plaintiff's rights in suing in Arkansas for an injury sustained there did not differ from those of any married woman domiciled in that State; that the legislature of Arkansas had determined by whom a suit might be brought for personal injuries sustained by a married woman; had enlarged the rights of married women in respect of damages recoverable by them on account of personal injuries sustained within the state; and that these laws necessarily inured to the benefit of every married woman who subsequently sued in the courts of the state for personal injuries there sustained, and must be held to have been intended to have, and to have, a uniform operation throughout the state.'
"The force of these statements, when so deliberately made on the precise point, may not be destroyed by calling it `dicta'. It is inconceivable that recovery would be permitted where the point urged was sound, even though the `dicta' considered it unsound.
"We think this principle is sound. A cause of action is `the unlawful violation of a right which the facts show.' Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069; Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148. When appellee entered Oregon she was extended by that state the right to proceed along the highway without injury by negligent conduct of appellants, regardless of whether or not her husband was also negligent — a right not extended to her by California. She sues for a violation of the Oregon right. It would be a strange situation to determine the existence and extent of the right by reference to the law of a state which did not recognize such a right. It seems apparent that the existence and extent of such right should be determined by the law of the state which extends it. We think a contrary rule, as applicable here, is unsound. The theory that the cause of action is `property' has been criticized (1 Cal.L.Rev. 296, 297; 2 Cal.L.Rev. 161, 162) as has been the rule denying recovery by the wife where the husband is guilty of contributory negligence. 24 Cal.L.Rev. 739.
"What has been said relates to the two points mentioned insofar as they prevent a cause of action from arising, such points being (1) whether recovery by the wife would `benefit' the husband; and (2) ownership of the cause of action. See Restate, supra, 471, § 385 (e). Considering them as defenses only, it seems quite clear that they are to be determined by Oregon law. The applicable rules regarding contributory negligence are those of Oregon (Restate, supra, § 385; 2 Beale, The Conflict of Laws 1298, § 385.1) as are the rules regarding imputed negligence. 2 Beale, supra, 1299, § 385.2. The defense that appellee did not own the cause of action, or that recovery would benefit her husband would, we think, in the situation disclosed here, be tested by the law of Oregon, on the same principle as are contributory and imputed negligence.
"Affirmed."
The decisions from other jurisdictions which have come to our attention are in accord with the rule of the United States Supreme Court, viz., Forbes v. Forbes, 226 Wis. 477, 277 N.W. 112; Bourestom v. Bourestom, 231 Wis. 666, 285 N.W. 426; Alberts v. Alberts, 217 N.Car. 443, 8 S.E.2d 523; Wintuska v. Louisville N. Ry. Co., 20 S.W. 819, 14 Ky.L.Rep. 579; Usher v. West Jersey R. Co., 129 Pa. 206, 17 A. 597, 4 L.R.A. 261, 12 Am.St.Rep. 863; Erickson v. Pacific Coast S.S. Co., C.C., 96 F. 80; Boston M.R. Company v. McDuffey, 2 Cir., 79 F. 934, 51 U.S.App. 111; Van Doren v. Pennsylvania R. Co., 1 Cir., 93 F. 260.
In Lower v. Segal, 59 N.J.L. 66, 34 A. 945, the court held that a proceeding which takes a right of action from a statute of one jurisdiction and the form of redress from that of the other lacks the legal justification of either.
In Stone v. Groton Bridge Manufacturing Company, 77 Hun 99, 28 N.Y.S. 446, it was held that an action is maintainable only by the person who is by the term of the statute of the state where the cause of action arose authorized to maintain it. To the same effect are, Nashville C.R. Company v. Sprayberry, 8 Baxt. 341, 35 Am.Rep. 705; Selma R. D.R. Company v. Lacey, 49 Ga. 106; Western A.R. Company v. Strong, 52 Ga. 461.
The doctrine that a tort action is transitory and that it is a chose in action or personal right or property and that the ownership of personal property is governed by *Page 253 
the laws of the domicile of the person was the rule enforced in Williams v. Pope Manufacturing Company, supra.
15 C.J.S., Conflict of Laws, § 18, page 930, states the following rule: "The modern rule that the law of the actual situs governs the validity of a transfer of movable property rests on the fundamental proposition that every country has the right to subject all property within its jurisdiction to the control and regulation of its laws." Pullman Palace Car Company v. Commonwealth of Pa., 11 S.Ct. 876, 141 U.S. 18, 35 L.Ed. 613, 616.
The rule set out in Lykes Bros. S.S. Company, Ltd., v. Esteves, 5 Cir., 89 F.2d 528, 530, is, "The general rule is that the lex loci delicti determines substantive rights, while the lex fori prevails in matters of remedial procedure."
Under this rule, whether plaintiff's rights are substantive or remedial, under Article 2402 of the Revised Civil Code, she would properly be in court but it is our opinion that the right granted her by said codal article is a substantive right. It provides that damages resulting from personal injuries of the wife shall not form part of the community of acquets and gains but shall always be and remain the separate property of the wife and recoverable by her alone.
Black's Law Dictionary, 3d Ed., defines "substantive law" to be that part of the law which courts are established to administer as opposed to the rule according to which the substantive law itself is administered. It is that part of the law which creates, defines and regulates rights as opposed to adjective or remedial law which prescribes the method of enforcing rights or of obtaining redress for their invasion.
We have searched the jurisprudence of the nation appertaining to conflict of laws, in so far as time will permit, in an effort to find support for the decision of Williams v. Pope Manufacturing Company, supra. Our search reveals that the jurisprudence of the United States Supreme Court, the Federal Circuit Courts of Appeal and all the state courts where the question has been presented is in direct conflict with the rule laid down in Williams v. Pope Manufacturing Company.
We have borne in mind that Louisiana operates under the civil law while other states are under the common law, yet we are unable to see where this could cause a different rule in a case involving conflict of laws where the identical question involving identical laws of different states are involved. We admit this may be due to our lack of ability to understand the difference in applying the law to this case. It is our opinion that plaintiff is properly in court and that defendant's exception of no right of action should have been overruled.
It was our first intention, due to the conflict, to apply to the Supreme Court for instructions but have decided to set out the law as we have found it and determine the issue, realizing that the Supreme Court will no doubt grant a writ and put the question presented at rest.
It therefore follows that the judgment of the lower court is reversed, the exception of no right of action is overruled and the case is remanded to the lower court to be proceeded with in accordance with law; cost of appeal to be paid by appellee and all other costs to await the final determination of the case. *Page 282