The complaint and information appear to be sufficient.

The judgment of the trial court is affirmed.

**BAUGHAN et al. v. GOODWIN et al.**

No. 11357.

Court of Civil Appeals of Texas. Galveston.

April 9, 1942.

Rehearing Denied May 14, 1942.

Taliaferro & Graves and L. W. Graves, Jr., all of Houston, for appellants.

Elbert Roberts, of Houston, for appellees.

GRAVES, Justice.

In the judgment here on appeal, the 61st District Court of Harris County, Texas, sitting without a jury, partitioned 125 acres of land in that county, found to have belonged to H. Peyton Baughan, deceased, at the time of his death in Virginia, as between the parties to this appeal. Those parties were his six nephews and nieces and his sister, Etha Baughan Quisenberry, who, together, constituted his sole heirs—or all persons having any interest in his local estate—under the Texas laws of Descent and Distribution, Vernon's Ann.Civ.St. art. 2570 et seq.

In doing so, the court awarded an undivided ⅙ interest therein, share and share alike, to those nephews and nieces, namely, Peyton M. Goodwin, Harvey Allen Goodwin, Elizabeth Goodwin Wilson, Elsie Goodwin Gillespie, Charles A. Baughan, Jr., and Ruth Quisenberry Martin, denying the sister, Etha Baughan Quisenberry, any recovery; on request, however, it modified that apportionment by specifically providing that Charles A. Baughan, Jr., and Ruth Martin should have their ⅔ thereof set apart to them jointly in a specific ⅓ part of the whole tract, and that the other ⅔ part—so segregated—should be likewise apportioned jointly to the other four named relatives.

This decree proceeded from the court's determining that H. Peyton Baughan, deceased, who was the common source of the claims of all the parties to interests in the tract, had died testate in the State of Virginia, leaving a will, which, under the proper construction thereof, so vested the interests of these parties in this Texas land; that will, in his verbis, was this:

"I, H. Peyton Baughan, being of sound mind, do make and declare this to be my last will and testament, and I hereby revoke all former wills and testaments.

"1st. I wish all my honest debts paid as soon after my death as is reasonable.

"2nd. I do not wish my funeral expenses to exceed three hundred and fifty ($350.00) dollars.

"3rd. At my death I give and bequeath to my niece Mary Goodwin Perkins my farm with all improvements thereon, situated about one mile west of the town of Gor-donsville in· Orange County adjoining the lands of Hiram Estes, Parker and C. & O. R. R. Co., and known as 'White Hill', containing forty acres be the same more or less.

"4th. I wish twenty thousand dollars to be invested, in trust, for my sister Etha Baughan Quisenberry, she to draw the interest on the same as long as she lives, and at her death the twenty thousand dollars to be equally divided between my nieces and nephews.

"5. Whatever is left consisting of money, notes bonds or stock to be equally divided between Peyton M. Goodwin, Harvey Allen Goodwin, Elizabeth Goodwin, Elsie Goodwin Gillespie, Charles A. Baughan, Jr., Ruth Quisenberry Martin.

"6. I give and bequeath my diamond ring to Peyton M. Goodwin, my watch and chain to Harvey Allen Goodwin. I give and bequeath to Charles A. Baughan, Jr., all of my wearing apparel, guns, signet ring and all other personal effects.

"7th. The sale of my bonds notes and stock and property of every kind I leave to the wisdom of my executor.

"8th. I hereby appoint R. Carroll Slaughter executor of this my last will and testament.

"9th. If any of the beneficiaries named in this will raise any objection to any part or parcel of the will, then I desire such a one to be cut off and his or her part to be one dollar.

"Witness my hand and seal this 6th day of September, 1932.

"H. Peyton Baughan     (Seal)

"Witnesses:

"J. B. Parrott

"T. R. Ross."

The appellants, Charles A. Baughan, Jr., one of the nephews and sole heir of the deceased's brother, Etha Baughan Quisenberry, his surviving sister, and her daughter and only child, Ruth Quisenberry Martin, one of the nieces, inveighing here against that disposition below, contend:

(1) That the title to this Harris County, Texas, land did not pass under the quoted will, but that such testator in fact died intestate as to it, hence it passed, as an undivided entirety, to Charles Baughan, Jr., and Etha Quisenberry—the latter's daughter, Ruth, inheriting no interest—under the Texas Law of Descent, ⅓ each to him and to her, the remaining ⅓ going to the appel-

lees jointly, they all being the children of another of deceased's brothers.

(2) That, in any event, the Circuit Court of Orange County, Virginia, rendered a judgment on February 20 of 1934, in a case entitled R. Carroll Slaughter v. Charles A. Baughan, Jr., et al., which was never appealed from, wherein it was finally adjudicated and found as a fact—with essentially the same parties before it as those here—that H. Peyton Baughan had died intestate as to this tract of land in Harris County, Texas, which determination had bound all parties hereto, and especially had estopped these appellees from herein contending to the contrary.

The appellees, on the other hand, urge the correctness of the challenged judgment, upon the contentions:

(1) That the quoted will, as an entirety, clearly reflects the testator's intention that this Texas land should pass to the parties named in the 5th clause thereof;

(2) That, in no event, could the purported Virginia judgment, upon which appellants rely, "operate to affect the interest in the Texas land appellees would receive under the will of H. Peyton Baughan, nor did they receive any benefits whatever under such claimed judgment."

The gist of appellants' position—they not only not having questioned the due execution and probate in Virginia of the copied will, but having relied and sued upon it in this partition suit—is this: Intrinsically, as well as under the attending circumstances, it is permissible to consider, in construing it, the instrument reflects upon its face that the testator did not thereby intend to dispose of this 125 acres in Texas, hence that he died intestate as to it; further that, in any event, the Virginia court had validly and bindingly upon all the parties here, which decree they had all subsequently so accepted and acted under, adjudicated as between them that he had so died intestate as to this land; wherefore, it had passed under the statutes of Descent and Distribution in Texas to his heirs, giving the two appellants above named a ⅓ interest therein, each, and the balance to the appellees as a group, as recited.

Under this court's view of the questions so presented, due order calls for the disposition of appellants' second point on appeal ahead of their initial one—that is, whether or not the declared-upon Virginia judgment was so binding upon the parties in this trial in Texas.

If it was, further construction here of the will becomes immaterial, since it could make no difference how it should be interpreted, if the appellees were precluded from again litigating that erstwhile issue with these appellants.

Under this record, that judgment is held to have been binding upon the appellees, and to have estopped them from contending otherwise in this litigation.

A brief resume of the undisputed facts so appearing is this:

"On February 20, 1934, R. Carroll Slaughter, Executor of H. Peyton Baughan, filed suit in the Circuit Court of Orange County, Virginia, to construe the particular will quoted supra. February 28, 1934, each of the appellees (except the husbands of the three women) and all other parties to this suit, waived service. In the Bill of Complaint the Executor alleged that Mr. Baughan died in Orange County, Virginia, in November 1933, survived by his sister, Mrs. Etha Baughan Quisenberry, and nephews and nieces, namely, Mary Goodwin Perkins, Peyton M. Goodwin, Harvey Allen Goodwin, Mrs. Elizabeth Goodwin Wilson and Mrs. Elsie Goodwin Gillespie, children of a deceased sister, Susie Baughan Goodwin, and Charles A. Baughan, Jr., a son of a deceased brother, Charles A. Baughan, Jr., and Ruth Quisenberry Martin, daughter of Mrs. Etha Baughan Quisenberry, and that plaintiff had been appointed and qualified as Executor. Then followed property allegations, showing $53,-789.05 intangible personalty, White Hill Farm of 40 acres, 55 acres also in Virginia, acquired October 25, 1933, and the 125 acres in Texas, here involved. Then followed an allegation of the construction placed upon the will by the executor and his counsel, in that the executor said that the White Hill Farm was devised to Mrs. Perkins, and that, under the fourth clause of the will, the nephews and nieces referred to were those living at the time of the death of the deceased. Then followed an allegation as to the fifth clause, the executor saying that he had been advised that such clause operated only upon the personal estate, and, in brief, that Mary Goodwin Perkins was also entitled to share in the remainder of the $20,000.00, after the death of Mrs. Quisenberry; that the seventh clause only authorized the executor to deal with the person estate, and did not concern the real estate. Thereafter appeared, in paragraph 5 of the bill of complaint, a spe-

cific allegation that the executor had been advised that H. Peyton Baughan died intestate as to all of his real estate, except that which was mentioned in the will, namely, his home place, known as 'White Hill', and specifically asked the court to advise him whether or not Mr. Baughan died testate as to any real estate, except White Hill; then followed a prayer for a construction of the will and each clause.

"In its final decree the court authorized an increase in the amount of funeral expenses, upon a showing that all of the beneficiaries had directed the executor to pay funeral expenses in excess of $350.00. In the second clause the court found that the remainder of the $20,000.00 trust fund should be divided between all of the nieces and nephews living at the time of Mr. Baughan's death, and that they take vested remainders.

"In the third clause the court construed the will as giving to Peyton M. Goodwin, Harvey Allen Goodwin, Elizabeth Goodwin Wilson, Elsie Goodwin Gillespie, Charles A. Baughan, Jr., and Ruth Q. Martin, each a one-seventh interest in the personal estate of the deceased, after the $20,000.00 trust fund had been set up.

"The fourth clause, in part, is this:

"'4th. * * * The court construes * * * that no right or power over the real estate of which the said H. Peyton Baughan died seized and possessed was given said executor, and the court doth so hold and doth now adjudge, order, and decree, that the said H. Peyton Baughan died intestate as to the * * * fifty-five acres (in Virginia), * * * and the same passed to his heirs at law under the statute of descents and distributions; and the said H. Peyton Baughan, deceased, likewise died intestate as to the real estate * * * lying in the State of Texas, County of Harris, containing one hundred and twenty-five acres, and that said lands passed to the heirs at law of the said H. Peyton Baughan, deceased, according to the statute laws of the State of Texas, in such cases made and provided.'"

Indeed, the appellees do not question this factual condition, except as to the single detail of their having received benefits under the Virginia judgment; their sole counter-contention against the binding character of that decree seems to this court to be, that it is void, because of the absence before the Virginia court in rendering it of the husbands of the three married women among the appellees, which husbands, however, were parties along with their wives in this trial court in Texas; it being their view on the law that the sister-state court's action was a nullity against them, because the husbands of the married appellee-women were not before that court, hence, the land being located in Texas, that court neither had jurisdiction of the property nor of the persons here involved; that its judgment could neither affect the title to this real estate in Texas, nor estop the appellees from claiming their interests therein, pursuant to the terms of the quoted will, under such authorities, among others, as these: 9 Tex.Jur., p. 359, sec. 8; Ball v. Norton, Tex.Com.App., 238 S.W. 889; Ebell v. Bursinger, 70 Tex. 120, 8 S.W. 77; Tannehill v. Tannehill, Tex.Civ.App., 171 S.W. 1050; Sharpe v. Landowners Oil Ass'n, 127 Tex. 147, 92 S.W.2d 435; Miller v. Davis, 136 Tex. 299, 150 S.W.2d 973, 136 A.L.R. 177; Tex.Jur., Vol. 17, p. 144, sec. 15; Gorman v. Gause, Tex.Civ.App., 36 S.W.2d 279; Parker v. Schrimsher, Tex. Civ.App., 172 S.W. 165.

Contrarily to these considerations, it is held:

█ First, on the facts, as the foregoing recitals have indicated, appellees did receive substantial benefits as a direct result of the Virginia court's decree; second, on the law, that the absence of the appellees' husbands as parties to the Virginia cause and judgment did not invalidate it, for the reason that, pursuant to Article IV, Section 1—being the Full Faith and Credit provision—of the United States Constitution, the validity of the Virginia judgment was determinable upon the law of that state (the forum), rather than that of Texas; such law did not require the presence as parties of these husbands, as is made manifest by Section 5134 of the Code of Virginia, which statute, together with the entire transcript of the Virginia court's proceedings underlying its judgment, were properly in evidence in this Texas court.

So that, the appellees' answer is considered to be further inept, in that the question here is, not whether the Virginia court in rendering its judgment had jurisdiction both of the parties and of the property, in the sense of undertaking to exercise physical power over this Texas land, but rather whether that court, with all the parties required by its laws before it, had the jurisdiction to so construe the will of a Virginia decedent as to bind the willing parties to its

736

adjudication of the facts therein found—including one of the intestacy of the deceased as to this Texas land—as well as to constitute an estoppel against their later contending otherwise in the Texas courts.

In other words, this record being in full conformity to the procedural requirements of cited Article IV, Section 1, of the United States Constitution, the inquiry is reduced to one-simply-of whether a mere absence from the Virginia court of these husbands, although a married woman in that state is treated under its laws as if she were a feme sole, and these three wives did not in any way plead therein their own coverture as a defense, rendered its adjudication wholly void in this state.

■ All the estate, except the 125 acres, was in Virginia; the testator had lived and died there; the decree adjudicated to the appellees a residuary interest in the $20,000 trust-fund the will set up, which they admitted having received, although claiming that they would have gotten that much aliunde, anyway; they also received an interest in the 55-acre Virginia tract of land, which thereafter they deeded to some one else; in 1934 five of them received $4,956.10 each from the Executor, on their "legacy account" under his administration of the will, and, as late as 1935, one of them—Allen Goodwin—undertook to buy Mrs. Quisenberry's interest in this Texas 125 acres; in short, they thus affirmed, acted under, and received benefits by virtue of this uncontested and unappealed-from decree so probating their relative's will in Orange County, Virginia, on April 12 of 1934, without attack of any sort against it, until the filing of their amended answers in this suit at Houston on February 10 of 1941, when, for the first time, they alleged that the testator had died testate as to the Harris County land.

They did not even then question the validity of the will per se—on the contrary, they declared upon and recovered solely by virtue of it.

■ Wherefore, in these circumstances, the rule thus stated in Section 451, American Law Institute, Conflicts Restatement, is thought to be applicable: "A party approving and participating in proceedings in a court of any state, will be precluded from questioning the jurisdiction of the court over his person in any subsequent proceeding in that state or in any other state, if the court in which he appeared purported to render a judgment against him."

See also Empire Gas & Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.2d 1092.

Nor does it matter that the judgment may have been one of a sister state; Hall v. Jones, Tex.Civ.App., 54 S.W.2d 835; Uphoff v. Meier, 184 Okl. 378, 87 P.2d 960; In re Roeben's Will, 171 Misc. 548, 13 N.Y.S.2d 53; McCune v. Goodwillie, 204 Mo. 306, 102 S.W. 997.

The San Antonio Court of Civil Appeals, in this Hall case, just cited [54 S.W.2d 836], puts the distinction between the cause at bar and those ruled by the authorities relied upon by the appellees, this way:

■ "It is elemental that the courts of one state have no authority or jurisdiction to determine a naked question of title to real property situated in another state, or to divest or invest the title.

"But it seems to be equally well settled that the courts of one state may exercise jurisdiction, when affirmatively invoked or acquiesced in, to determine the validity or effect of a deed of conveyance of real property situated in another state so as to bind the parties to such decree, which, operating directly upon them personally, prohibits them from disputing it in another state."

That same differentiation is likewise very pointedly set forth by the Missouri court in McCune v. Goodwillie, supra.

■ Moreover, the asserted invalidity of the sister-state judgment in this instance, because the husbands of the appellee-women were not parties when it was rendered, merely raises a defensive matter that should have been presented in that cause by a plea of coverture on their part; but the record here shows that no such plea was interposed; precisely this situation has been declared to constitute no impediment to giving a foreign judgment full faith and credit in this state. Guaranty State Bank v. Kuehler, Tex.Civ.App., 114 S.W.2d 622, writ of error refused, and authorities cited; Bray v. Union National Bank, Tex.Civ.App., 194 S.W. 1165.

■ In other words, these Texas holdings recognize the rule to be with us, as is quite generally declared elsewhere, that the validity of a judgment is determinable by the law of the state where rendered, especially as related to such procedural

matters as the interposition of pleas of coverture. Texas & Pacific R. Co. v. Humble, 181 U.S. 57, 21 S.Ct. 526, 45 L.Ed. 747; Traglio v. Harris, 9 Cir., 104 F.2d 439, 127 A.L.R. 803; New York Evening Post Co. v. Chaloner, 2 Cir., 265 F. 204, at page 211; Adam v. Saenger, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require a reversal of the trial court's judgment, but, since it will be necessary that some matters of fact be ascertained in order for an equitable partition of the 125 acres between the parties here to be attained, the cause will be remanded, with instructions to the trial court to hear evidence and then partition the land in accord with the ownerships herein decreed.

Reversed and remanded, with instructions.