UNITED STATES v. WATERS-PIERCE OIL CO.

(Circuit Court, E. D. Missouri, E. D. April 27, 1910.)

No. 5,753.

**1.** Public Lands (§ 8\*)—Trespasses—Recovery for Property Unlawfully Removed—Innocent Purchasers.

The United States cannot recover in conversion the value of property unlawfully taken from public land from the second innocent purchaser of such property after its sale by the trespasser.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 8.\*]

\*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. PUBLIC LANDS (§ 8*)—BOXING TREES FOR TURPENTINE—RECOVERY FOR GUM REMOVED—INNOCENT PURCHASERS OF PRODUCT.**

Where gum taken from trees on public land under homestead entry, in violation of law, was sold to distillers, and by them manufactured with gum obtained from others into turpentine and resin, and such products were sold to a purchaser, who had no knowledge of the source from which the gum was obtained, the United States has no title to such turpentine or resin which will support an action of conversion against the purchaser.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 8.*]

Actions by the United States against the Waters-Pierce Oil Company. On motions to direct verdicts for defendant. Motions sustained.

Charles A. Houts, U. S. Atty., and T. P. Young, Asst. U. S. Atty. J. D. Johnson and Loomis C. Johnson, for defendant.

PER CURIAM. This has been a most interesting trial to the court. The cases here are not particularly important from the amounts involved, either to the government, with its great wealth, or to the defendant, with its supposed great wealth. The principles, perhaps, are.

Now, in disposing of this matter, I wish to commence at the end, instead of at the beginning. In the case last tried, in the year 1905, a woman had made an entry on this quarter section of land; that is, the government had segregated it through its appropriate officials from the great body of the public domain, and had agreed, on the performance of certain conditions, to convey the title to this woman. During that time she, as she states, to improve the homestead, tapped or boxed certain of these trees, and took therefrom some of the crude gum, and sold it to a distillery. The distillery had no knowledge of her whatever. After distilling it, the distillery sold the rectified spirits of turpentine and resin to defendant. At that time, of course, the act of 1906 had not been passed. It was not in violation of law. Whether, prior to Act June 4, 1906, c. 2571, 34 Stat. 208, one having a mere entry of a portion of the public domain had the right to box the trees for crude gum, need hardly be settled. At least, in that case there is no question but that the company distilling it distilled it along with other gum purchased, and sold it to the defendant, Waters-Pierce Oil Company; both of them being altogether ignorant of the source from which it came, or any other wrong. In such case, that the government may not prosecute successfully its action for conversion of its property is apparent, and the motion for an instructed verdict in that case will be sustained.

The other case is, to the mind of the court, a much closer proposition. In that case a man by the name of Denmark had, on his application to the government, segregated from the public domain and acquired an interest in 160 acres of the land. So long as the public domain remains untouched, the government is the full, legal, and equitable owner of the property. Whenever under any grant, or under any contract to grant, the government passes the possession of a

certain tract or tracts of property to a citizen, with the promise that under the law it will convey the full title to the applicant on his fulfilling certain conditions, the grantee immediately becomes interested in such property. Of course, the government retains the legal title; but the party entering upon such property obtains certain rights therein, as did Denmark in this case. He appears to have erected improvements on this property of the value of some $200 or more and under some kind of an arrangement with Painter he released his homestead right, and Painter paid his filing on the property, and by some kind of a deal Painter succeeds to whatever rights Denmark had in the property. Now, at the time this property was segregated from the great mass of the public domain by this filing, at the time when Painter was rightfully in possession of the property under his entry, and by the performance of certain conditions required by law would succeed to all of the title, both legal and equitable, fully, and all of the appurtenances, timber, and everything that goes to make up the property, at this time the government, perhaps to remedy the very evil here complained of, passed an act making it a misdemeanor for any one in possession of a homestead under this kind of a right, or any one else when in possession of this kind of government land, to box this timber and take away and sell crude gum. However, Painter, in violation of this law, after having been notified by the agent of the government to the contrary, and after repeated notifications, did box this timber, and did, contrary to the law, remove from this homestead this crude gum. Berea knew this, and Berea assisted. The property was regarded as Painter's property; but Berea knew the circumstances, and there is no question whatever but the government could have recovered from Berea what this property, this gum, was worth as it left Berea's hands, no matter what improvements he put into it. They were the government's trees, and it had a title to the gum taken from its trees; and the evidence also shows that an agent of the government there notified Berea of the fact.

This action is for conversion. The government says in this case it is entitled to recover as for a willful trespass, because the defendant in this case converted its property. The distilling company, by the process of distillation, whatever that may be, reduced this property from the state in which it was taken from the homestead into articles of general commerce in the markets of the world and in general use. Defendant in this case, Waters-Pierce Oil Company, had a contract to purchase the property from this still. This concern, as was said of the one distilling the gum in the other case, it is clearly shown, distilled more than the product from this homestead. Now the act of conversion is a wrong, a tort. The Waters-Pierce Company, on being appealed to in this matter, the government saying to it, "You have secured my property," under the law would have a right to say to the government, "What property do you claim?" in order that, if the government could distinguish its property, it might return it back to the government, and relieve itself if it believed itself guilty of the wrong, or that it held property that belonged to the government. That could not have been done in this case. The Waters-Pierce Oil Company never could, on any demand being made, have returned what it

got. The government never had any title to what the Waters-Pierce Oil Company purchased. True, it had title to this gum. It might have recovered it from the trespasser or the distillery; but it never had title to the turpentine and resin. It never could have recovered the property after it went into Waters-Pierce Company's hands, except in bulk, as a man would his grain going into an elevator. It never could distinguish it after having been mingled.

Taking that into consideration, taking further into consideration the fact that the Waters-Pierce Oil Company entered into a contract in this matter, long before these matters occurred, and could have been forced to take the products from the distillery, because it was under contract so to do, and, further, while we do not believe that it devolved upon the government, knowing this violation of the law, to bring an injunction suit, still I do not believe that the government may, knowing that its criminal statutes are being violated, as in this case by Painter and the distilling company, sit still and not prosecute these parties in any way, and allow the property in a changed condition to come into the hands of a wholly innocent third party, and then, these things happening with the knowledge of the government's agent, be allowed to recover.

So far as the remainder of the defense is concerned, I cannot consider that. Simply on the entire evidence in the case, conceding, as must be done, that there was no fraud or wrongdoing by the defendant in this case, and that the government, knowing that wrong was being committed, stood by and allowed it, and considering the nature of the action, I shall have to sustain this motion.