PARISH et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. January 3, 1911.)

No. 2,095.

PUBLIC LANDS (§ 8*)—TRESPASS — EXTRACTING TURPENTINE FROM TREES ON UNPERFECTED HOMESTEAD—DAMAGES RECOVERABLE.

The boxing of trees by a settler on public land covered by an unperfected homestead entry and the extracting of crude turpentine therefrom constitutes in law a willful trespass, although the settler may have acted in good faith and without knowledge of the illegality of the act; and on relinquishment of his entry the United States is entitled to recover the value of the products manufactured from such crude material from any person into whose possession the same may have passed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 8; Dec. Dig. § 8.*]

In Error to the Circuit Court of the United States for the Northern District of Florida.

Action at law by the United States against W. L. Parish and the Consolidated Naval Stores Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Francis B. Carter (W. A. Blount and A. C. Blount, Jr., of counsel), for plaintiffs in error.

F. C. Cubberly, U. S. Atty., and Emmett Wilson, Asst. U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. This was an action by the United States, plaintiff, against W. L. Parish and the Consolidated Naval Stores Company, a corporation, defendants. The declaration charged, in the first count, that the defendants had converted to their own use and deprived plaintiff of the use, possession, and value of plaintiff's goods and chattels—that is to say, turpentine and rosin—to the value of $455. The second count is to the same effect, except it describes the goods as crude gum, the product of pine trees, of the value, etc.; and the third count charges that the defendants had entered the plaintiff's close, describing it, and cut, chipped, chopped, and scraped, and caused to be cut, chipped, chopped, and scraped,

3,332 pine trees growing on plaintiff's land, and greatly damaged the trees, in the sum of $166.60. The defendants pleaded "not guilty."

The plaintiff proved that the 160 acres described in the declaration was entered as a homestead by Wyatt S. Parish on September 16, 1902; that the entry remained in good standing until January 10, 1908, when it was voluntarily relinquished.

Wyatt S. Parish testified that he entered the homestead in good faith September 16, 1902, and immediately began building and clearing, and completed his home thereon in the early part of 1903, when he moved in and cultivated successively each year, beginning in 1903, until he relinquished his entry, about 5 acres of the land, raising ordinary agricultural products thereon; that he intended in good faith to perfect the same, and to that end made the property his actual home; that in the fall of 1903–04 he boxed the pine timber upon the land, in good faith believing that he had the right to do so and that it was not contrary to law, and extracted crude gum, which he sold to the defendant W. L. Parish at his still near by at $5 per barrel during 1904; that in the spring of 1905 Mr. A. Paul, a government agent, was in the neighborhood, and told him that it was unlawful to extract gum from the trees, whereupon he immediately ceased working the boxes, and never thereafter chipped the trees, or cut boxes, or extracted gum from the trees on his homestead; that the market value of the gum sold to W. L. Parish was $5 per barrel; that he extracted the gum and sold it in good faith, believing that he had a right to do so, and that it was not against the law, and that at the time of cutting the boxes, extracting the gum, and selling it he was in good faith residing in the house erected by him upon the land, cultivating the part which he had cleared and inclosed, making the land his actual home, and having no intention to defraud the government or violate the law, but intending in good faith to comply with the law, to prove up, and obtain a patent at the expiration of the time required.

A. Paul, a witness, corroborated the statement of Wyatt S. Parish that, after he notified him in 1905 that it was not lawful to extract gum from the trees on his homestead, he immediately ceased doing so, and none had been since extracted.

The defendant W. L. Parish testified that he purchased at the market price, $5 per barrel, in 1904, from Wyatt S. Parish, crude gum, which he manufactured into spirits of turpentine and rosin; that when he purchased it he knew it came from trees on land entered by Wyatt S. Parish as a homestead, and which the latter had improved, was living upon, and cultivating; that he in good faith believed that Wyatt S. Parish had the right to extract the gum and sell it, and in good faith believed that Wyatt S. Parish was complying with the homestead laws by living upon, improving, and cultivating the land; that he had no intention of defrauding the government in purchasing the gum, and did not know it was contrary to law for him to do so; that he shipped the spirits and rosin to the Consolidated Naval Stores Company, his factors, at Pensacola, Fla., who sold it for his account and accounted to him for the proceeds before this suit was brought.

J. K. Rozier, an officer of the defendant the Consolidated Naval Stores Company, testified that the company received spirits of turpentine and rosin from W. L. Parish in 1904, and as factor or commission merchant sold it to other persons and accounted to said Parish for the proceeds before this suit was brought; that the company had no knowledge or intimation that any of the spirits or rosin had been manufactured from gum obtained from lands of the plaintiff, or that had been entered as a homestead under the acts of Congress; that the company supposed the property was really the property of W. L. Parish, and in good faith and without notice of wrong on the part of either W. L. or Wyatt S. Parish sold the manufactured product and accounted to W. L. Parish for the proceeds, having no knowledge or reason to suppose any of it came from the land that had been entered as a homestead.

There was no evidence tending to contradict the testimony of any of the witnesses as given above. The evidence proved without dispute that crude turpentine was worth on the market much less than the manufactured product, and that a barrel of crude gum, worth $5 when manufactured into rosin and spirits of turpentine, was worth more than $7.50 in the year 1904.

After all the evidence was introduced and the arguments had, the court instructed the jury as follows:

"That Wyatt S. Parish was in law a willful trespasser in extracting gum from the trees on his homestead, and for that reason the defendants are liable for the value of the spirits of turpentine and rosin manufactured from the gum, and not merely for the value of the crude gum; that they (the jury) should find for the plaintiff the value of the spirits of turpentine and rosin manufactured by defendant W. L. Parish from the gum purchased by him from Wyatt S. Parish, who extracted it from trees upon his homestead."

The defendants excepted to these charges, and requested the court to instruct the jury:

"If you find from the evidence that the homesteader, Wyatt S. Parish, in boxing trees and extracting the gum from his homestead, honestly and really believed that he had the right to do so, and that he had no intention of defrauding the government by so doing, or of taking property not his own, then you should find as damages the value of the crude gum, and not the value of the manufactured product."

And again:

"Even though, under the law, Wyatt S. Parish had no right to extract gum from the trees on his homestead, still, if he honestly believed that he had the right, and did not intend to defraud the government of property which he knew belonged to it, and he extracted and sold the gum under the bona fide belief that he had the right to do so, and he was at the time in good faith complying with the law requiring residence and cultivation and the like to enable him to perfect his homestead entry and really intended to so perfect it, then he was not a willful trespasser, and the damages should be estimated at the value of the crude gum, and not the value of the manufactured product."

These requests the court refused, and the defendants excepted. There was a verdict and judgment for the plaintiff, and the defendants sued out error, and under suitable assignments submit that the

trial court erred in the charges given and in refusing the requested charges.

In our opinion neither of these assignments of error is well taken. The charges given by the court correctly stated the law, and the requested charges were rightly refused. We cannot follow the counsel for the plaintiffs in error through an examination of all the cases which his commendable research has enabled him to place upon the brief. Besides the well-recognized principles of justice and the practice in equity, which courts of law now generally adopt, a few comparatively recent and pertinent cases amply support the view of the law taken by the trial judge. We content ourselves with referring to these cases: Woodenware Company v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230; United States v. Taylor (C. C.) 35 Fed. 484; Shiver v. United States, 159 U. S. 491, 16 Sup. Ct. 54, 40 L. Ed. 231, and the sections of the Revised Statutes cited in the opinion of the court in the Shiver Case.

This view as to what the law was at the time the trespass in this case was committed has, in our judgment, been approved by Congress by the act of June 4, 1906, making such trespasses a misdemeanor. Act June 4, 1906, c. 2571, 34 Stat. 208.

The judgment of the Circuit Court is affirmed.