## UNITED STATES v. WATERS-PIERCE OIL CO. (two cases).

(Circuit Court of Appeals, Eighth Circuit. May 6, 1912.)

Nos. 3,542, 3,543.

1. PUBLIC LANDS (§ 11*)—BOXING TREES FOR TURPENTINE—RIGHTS OF ENTRYMAN—RECOVERY OF PRODUCT BY UNITED STATES.

Prior to the passage of Act June 4, 1906, c. 2571, 34 Stat. 208, making it a criminal offense to box trees on land of the United States, or covered by any unperfected settlement or entry, for the purpose of obtaining pitch, turpentine, or other substance, it was not unlawful for an entryman, in possession of land under a valid entry, to make such use of trees thereon in the proper, customary way; but since the passage of said act such boxing of trees by an entryman is unlawful, and he acquires and can convey no title to the sap extracted, which becomes personal property of the United States, and the government may reclaim the same, or its products, even from an innocent purchaser, if specifically identified, or recover from him its value, if not so identified.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 9, 11–13; Dec. Dig. § 11.*

Rights acquired by homestead settlements and entries, see note to McCune v. Essig, 59 C. C. A. 434.]

2. WORDS AND PHRASES—"CULTIVATION."

The turpentine industry does not involve a "cultivation" of the trees, so as to make the sap fructus industriales, which may as properly be taken by an entryman as grasses or fruits; "cultivation," as an agricultural term, not being applicable to the process of extracting turpentine sap.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, p. 1781.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied July 22, 1912.

Actions at law by the United States against the Waters-Pierce Oil Company. Judgments for defendant, and the United States brings error. Affirmed in one case, and reversed in the other.

For opinion below, see 180 Fed. 309.

Charles A. Houts, U. S. Atty.

John D. Johnson (Loomis C. Johnson, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. The government brought two actions against the Waters-Pierce Oil Company to recover the value of turpentine products of the sap of long-leaf yellow pine trees growing on two quarter sections of land in Alabama. The actions were consolidated for trial, and at the close of the evidence the trial court directed verdicts for defendant.

The lands were subject to unperfected homestead entries by Painter and Malone, and the turpentine sap was extracted from the trees by the entrymen, who sold it to distillers, who in turn converted it into turpentine and rosin, which, intermingled with other like products of their distilleries, they sold to defendant. The defendant was an innocent purchaser. Painter's homestead entry and turpentine operations were in 1907; those of Malone in 1904 and 1905. These dates are important, because on June 4, 1906, Congress passed an act (34 Stat. 208) which provides:

"That every person who shall cut, chip, chop or box any tree on any lands belonging to the United States or on any lands covered by or embraced in any unperfected settlement, application, filing, entry, selection or location, made under any law of the United States, for the purpose of obtaining from such tree any pitch, turpentine or other substance * * * shall be guilty of a misdemeanor," etc.

Several matters may be disposed of without extended discussion. Prior to the Painter entry in 1907 the land involved was subject to another homestead entry, but the entryman relinquished it and Painter bought his improvements. This is not important. Painter's homestead right began when he made his own entry. It did not relate back to the initiation of the prior entry, which was abandoned. Again, it appears that after the trees were cut, the sap extracted, and the products sold to defendant, Painter relinquished his entry and disposed of his improvements to another, who entered the land and perfected the right to a patent. This does not help the defendant. Painter's homestead entry, unperfected, did not devest the government of its legal title to the land. Nor was it devested by any subsequent patent to Painter which could relate back to the initiation of his entry. The sap, when extracted from the trees, became personal property, and if it was extracted by Painter in violation of the act of Congress above quoted he acquired no right to it and could convey none; and in accordance with long-established and well-settled principles the government could reclaim the sap or its products, if specifically identified, even in hands of an innocent purchaser, or recover from him the value, if not so identified. The right and remedy of the government were not de-

stroyed by the making and perfection of an entry by another person after abandonment by Painter. In this particular the case is distinguishable from United States v. Detroit Timber & Lumber Co., 67 C. C. A. 1, 131 Fed. 668, Id., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499. In that case the equities were weighed between the government and a bona fide purchaser of timber from lands embraced in entries fraudulently made, but which had been perfected. The final receipts showed an apparently perfect equitable title.

[1] There remain for consideration the question whether the homesteaders, whose entries were unperfected, lawfully cut or boxed the trees standing on the land and removed the sap therefrom, and the true construction of the act of 1906. The turpentine industry has long prevailed in the South, and been recognized as one of the important businesses. We do not judicially know that when it is carefully and conservatively conducted the continued life and vigor of the trees are impaired or the value of the land lessened. There is no common knowledge to that effect of which we can avail ourselves. Prior to 1906 the land laws of the United States contained no definite prohibition of the practice as to trees on lands embraced in unperfected entries, and there is no course of reported judicial decisions indicating a settled policy of objection on the part of the government. These considerations justify the conclusion that before the passage of the act of Congress it was not unlawful for the entryman to make such use of the trees in the proper, customary way. Bryant v. United States, 45 C. C. A. 145, 105 Fed. 941.

It cannot be denied, however, that the haste for private gain does not always comport with a wise conservation of nature's resources, and that the practice under consideration, when intemperate and unrestrained, is likely to result in a permanent impairment of the chief value of the land. The sap is the blood of a tree and is essential to its life and growth. It may spare some from an abundance, but obviously there is a measure which, if exceeded, means injury or death. Many forests may be seen in the South in which the trees have been almost girdled with the ax in the hasty endeavor to secure the sap, and it is debatable whether in that condition their value for timber will long remain unimpaired. Congress may well have concluded that the better course was entirely to forbid a practice, which cannot easily be regulated, and which is so susceptible to abuse, and we think that is the intent of the act of 1906. It is in harmony with the important objects of the laws relating to the disposition of the public domain, and tends to protect it from fraudulent entries and the commission of injury and waste. If, as is frequently the case, the land is chiefly valuable for the trees or the turpentine products, the entryman's complete right and dominion is but postponed until he perfects his entry. A waste or substantial appropriation of the value before the perfection of the entry lessens his incentive to persist, and so tends to defeat the aim of the law. The act of 1906 is not directed solely against the trespasses of strangers, but by the scope of its letter and by its spirit it also applies to the conduct of the entrymen themselves.

[2] It is urged by defendant that the turpentine industry involves

196 F.—49

a cultivation of the trees, and that the sap is fructus industriales, which may as properly be taken by an entryman as the grasses of the fields, annual fruits, or the products of planted seeds. This is but an argument against the policy of the act of Congress. Besides, it ignores a substantial difference. Turpentine sap is obtained by cutting through the bark and exposing the fiber of the trees, which is chipped and hacked. From time to time the exposed area is enlarged to excite the flow of the sap, and when not restrained by the personal interest of ownership the temptation to injudicious and excessive cutting may lead to injurious results much greater and more immediate than follow ordinary improper husbandry. Cultivation, as an agricultural term, is not properly applicable to the process of extracting turpentine sap.

The judgment in case No. 3,542 is reversed, and the case remanded for a new trial; in case No. 3,543, the judgment is affirmed.