LIBERTY BELL GOLD MINING CO. v. SMUGGLER-UNION MINING CO.†

(Circuit Court of Appeals, Eighth Circuit.    March 3, 1913.)

No. 3,852.

**1. MINES AND MINERALS (§ 51*)—CONVERSION OF ORE FROM MINE—MEASURE OF DAMAGES—"RECKLESS" TRESPASS.**

In an action to recover damages for a willful and intentional trespass to mining property by removing and converting ore therefrom, it was not error for the court to instruct that the higher measure of damages should be allowed if the jury found that the ore was "recklessly" taken, since if defendant, with the means of ascertaining that it was the property of plaintiff, refused to use such means, and in reckless disregard

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 15, 1913.

of the rights of the true owner appropriated it, the law will presume that it was done intentionally and willfully.

[Ed. Note.—For other cases; see Mines and Minerals, Cent. Dig. §§ 137–141; Dec. Dig. § 51.*]

For other definitions, see Words and Phrases, vol. 7, pp. 5999–6001; vol. 8, p. 7781.]

**2. TRIAL (§ 145*)—TAKING QUESTIONS FROM JURY—AUTHORITY OF COURT.**

To justify a court in withdrawing an issue from the jury, it must appear that, giving the evidence the strongest probative force against the party asking for the withdrawal, there was no substantial evidence which would warrant a jury in finding that issue against him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 328, 341; Dec. Dig. § 145.*]

**3. MINES AND MINERALS (§ 51*)—ACTION FOR CONVERSION OF ORE FROM MINE —QUESTIONS FOR JURY.**

Evidence considered, in an action for trespass by removing and converting ore from a mine, and *held* to justify the court in submitting to the jury the question whether the taking of the ore was through mistake and in good faith, or intentional and willful.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137–141; Dec. Dig. § 51.*]

**4. MINES AND MINERALS (§ 51*)—ACTION FOR CONVERSION OF ORE FROM MINE —BURDEN OF PROOF AS TO INTENTION OF TRESPASSER.**

In an action of trespass for the removal and conversion of ore from a mine, where the taking is admitted or proved, it is presumed that the trespass was willful and intentional, and the burden of proof rests on the defendant to establish the contrary by a preponderance of the evidence; and this rule applies, although the ore was taken from a vein of precious metal under a mining claim, where extralateral rights may exist in owners of other claims.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137–141; Dec. Dig. § 51.*]

**5. MINES AND MINERALS (§ 51*)—INTENTIONAL CONVERSION OF ORE FROM MINE —MEASURE OF DAMAGES.**

In case of a willful and intentional trespass by the removal and conversion of ore from a mine, where it was milled and treated by defendant before being sold, the measure of damages recoverable is not the value of the ore at the mouth of the mine, but the value of the finished product as sold.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137–141; Dec. Dig. §. 51.*]

**6. TRIAL (§ 261*)—INSTRUCTIONS—REFUSAL OF REQUESTS.**

When a request for an instruction contains two or more propositions of law, if one of them is unsound, although the others may be good, it is not error to refuse the entire instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 484, 660, 671, 673, 675; Dec. Dig. § 261.*]

**7. TRIAL (§ 62*)—EVIDENCE IN REBUTTAL.**

Where a mining company, in an action against it for trespass by converting ore taken from plaintiff's claim, contended that when the trespass was committed it believed there was a gap of a certain width between the claims of the parties, and its engineer and manager so testified, it was not error to admit in rebuttal a plat made by defendant before the trespass, showing that the gap was not of such width, with evidence that the witness knew of such plat.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 148–150; Dec. Dig. § 62.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. MINES AND MINERALS (§ 51*)—CONVERSION OF ORE—ADMISSION OF EVI-, DENCE.

Assignments of error, based on the admission and exclusion of evidence, on the trial of an action of trespass for the conversion of ore from a mine, considered, and held not well taken.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 137– 141; Dec. Dig. § 51.*]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action at law by the Smuggler-Union Mining Company against the Liberty Bell Gold Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For convenience the defendant in error, who was the plaintiff in the court below, will be referred to herein as the plaintiff, and the plaintiff in error as the defendant. This action is to recover damages for a willful and intentional trespass of mining property. The taking is admitted by the defendant, but it denies that it was committed secretly, unlawfully, fraudulently, or willfully, or with knowledge that it was committing any trespass, but that it acted in good faith, believing that the ore was from a vein apexing in claims owned by it, and passing from the dips on plaintiff's Waters claim, and to which vein it believed at the time it was lawfully entitled. There was trial to a jury, and a verdict in favor of the plaintiff.

Henry F. May, of Denver, Colo. (John S. Macbeth, of Denver, Colo., on the brief), for plaintiff in error.

Henry McAllister, Jr., of Denver, Colo. (Jacob Fillius, of Denver, Colo., E. B. Adams, of Telluride, Colo., and Joel F. Vaile and William N. Vaile, both of Denver, Colo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and W. H. MUNGER and TRIEBER, District Judges.

TRIEBER, District Judge (after stating the facts as above). While there are a large number of errors assigned, counsel for plaintiff in error grouped them in six specifications, which cover all the issues involved, and are the errors upon which a reversal of the judgment in the court below is asked. These specifications, in the language of the counsel, are:

"(1) The court erred in charging the jury that the higher measure of damages should be allowed in case of either a willful, intentional, or reckless trespass."

"(2) The stating to the jury of cases of timber cutting and coal mining as illustrations of the rule in trespass cases, without calling to their attention the important distinction between such cases and metalliferous mining cases, where the right to go beyond the boundaries under certain conditions is a distinct part of the grant."

"(3) The refusal of the court to instruct that there was no sufficient evidence to warrant a finding of willfulness, except as to about 1,230 tons taken subsequently to July, 1910."

"(4) The instruction that the burden of proof is upon the defendant to show that its trespass was not a willful or intentional one."

"(5) The instruction as to the measure of damages in case of willful trespass, permitting the recovery of the gross assay value in the ground, without any deduction whatever either for treatment, freight, marketing expense,

or even that part of the value of the ore which cannot be recovered in treatment."

"(6) The admission and exclusion of certain evidence."

[1] 1. The charge given by the court on this point was:

"If you find that the ore was either recklessly, willfully, or intentionally taken by the defendant company, then the measure of the plaintiff's damages is the enhanced value of the ore when and where it was finally converted to the use of the defendant, which in this case would be the full amount recovered and realized therefrom by the defendant."

This is the part of the charge to which exception was taken, and is assigned as error in assignment of error No. 21. But in determining whether the court committed any error it is not permissible to pick out any one part of the charge, but the entire charge, or at least all of the charge which bears upon that proposition of law, must be considered by the appellate court.

The court, immediately after stating the law as set out above, proceeded:

"But if you should find that the defendant took and converted the ore from plaintiff's property through inadvertence or mistake, or in the honest belief that it was acting within its legal right, then the measure of damage is the value of the ore as it was in the ground before it was disturbed by the defendant; that is, the amount recovered and realized by defendant in its mill, less the actual cost of mining, transporting, and treating such ore."

The most serious objection made to this part of the charge by counsel for defendant is the use by the court in its charge of the word "recklessly." The charge of the court is practically the language used by this court in so many cases involving this question that it can no longer be considered as an open question in this court. Durant Mining Company v. Percy Consolidated Mining Co., 93 Fed. 166, 35 C. C. A. 252, Resurrection Gold Mining Co. v. Fortune Gold Mining Co., 129 Fed. 668, 679, 64 C. C. A. 180, 191, and Central Coal & Coke Co. v. Penny, 173 Fed. 340, 344, 97 C. C. A. 600, 605, are a few of the cases in point decided by this court. The same rule has been applied by this court in cases other than trespasses on mines. Times Publishing Company v. Carlisle, 94 Fed. 762, 36 C. C. A. 475, which was an action for libel; Guild v. Andrews, 137 Fed. 369, 70 C. C. A. 49, where the decision of an engineer who, under the contract, was made a final arbiter, was attacked.

It would perhaps have been better for the court to have explained to the jury in more concrete form, applicable to the facts established by the evidence in the case, what is meant by "recklessly"; but no specific objection was made to the charge upon the ground that it was not specific enough, nor did the defendant ask for a specific instruction on that question.

The special instructions asked on behalf of the defendant as to what constitutes a willful trespass, which would justify the recovery of the higher damages, apply practically the same test that would be applied to a charge of larceny, and for this reason were properly refused. Thus, in instruction No. 9, asked by the defendant, the court was requested to charge:

"It is not enough to warrant a finding of willful or intentional trespass that the defendant might have known, or had facts in its possession, a full consideration of which might have led it to believe that the ore in question belonged to the plaintiff, unless it willfully shut its eyes to the situation in order that it might obtain property that was not its own; in other words, no honest mistake or negligent omission will justify a finding of willfulness. There must have been a dishonest purpose to take the ore in spite of knowledge that it belonged to another, or a deliberate omission to avail itself of knowledge at hand amounting to an intent to take what did not belong to it, to warrant such a finding."

And in instruction No. 5, asked by the defendant, the court was requested to charge the jury:

"Unless there is substantial evidence that the defendant knew that the ore which it appropriated belonged to the plaintiff, or that it intended to appropriate the property of plaintiff to its own use, you are not warranted in returning a verdict for the higher measure of damages."

Intent, being a state of the mind, can but seldom be proven by direct evidence. For this reason the law presumes that a party intended the natural consequence of his acts, and if a person has the means of ascertaining facts, but refuses to use these means, and, reckless of the rights of the true owner, appropriates his property to his own use, the law will presume that he did it intentionally and willfully. The court below committed no error in charging the jury on that point as it did, and in refusing to give the instructions asked by the defendant.

2. It is claimed that the court erred in its illustrations of the rule in trespass cases for timber cutting and coal mining. The court, after stating to the jury the issues raised by the pleadings, told them:

"Before asking you to give your attention directly to the facts and issues involved in this case, it may be helpful to you, in considering those issues, to first illustrate by a simple example the principles of law applicable here which must guide you in reaching a verdict, and I give you for that purpose this illustration: We will assume that A. enters upon the land of B., and cuts and removes from B.'s land a standing tree which he manufactures into lumber; thereupon B. sues A. for damages, claiming that the tree cut and removed contained 1,000 feet, board measure, of lumber, of the value of $10. The fact alone that A. entered upon the land of B., and cut and removed a tree therefrom, constituted A. a trespasser, and rendered him liable to B. A., in his answer to the suit of B. for the $10 claimed as the value of the 1,000 feet of lumber in the tree, set up that he took the tree innocently or inadvertently, believing that it was on his own land, and for that purpose he might show that his land and B.'s land adjoined, and the tree was taken from near the line. If the jury believed that he took it under the honest and mistaken belief that it was his own tree, then B. would not be entitled to recover the value of the board measure in the tree, to wit, $10, but he would only be entitled to recover the value of the tree as it stood; and for that purpose that value might be ascertained by deducting all that it had cost to cut and remove and manufacture that tree into lumber. If that cost amounted to $9, and the lumber was worth $10, it would necessarily follow that the tree as it stood was worth the difference between $9 and $10, to wit, $1, which would be all that B. could recover. If, upon the other hand, the jury should believe that A. did not make an honest mistake, but that he willfully went across the line, knowing that he was across the line, and cut and removed B.'s tree, or if he was reckless and indifferent about where he was cutting, and did not care or think as to whether it was his land or some other man's land on which the tree stood, then under those facts, or either of such facts, A. would be what is called an intentional, willful trespasser, and he would not be entitled to have the $9 deducted; but being such willful

trespasser, having taken the property of B. under those circumstances, the law lays down a higher measure of damages, gives him no credit for the labor and cost expended on the raw material, but charges him with the whole value of it in its manufactured state. Now, that is aside, of course, gentlemen of the jury, from the facts in this particular case, but it is by way of illustration, for the purpose of conveying to your minds the legal principles that we have to do with, and it is given because the testimony in this case is of a great mass, going into great detail, dealing with a subject with which few of you are likely not at all familiar.

"This same rule to which I have called your attention has also been applied in the taking of coal; and in the taking of coal by one to whom it does not belong, the rule is that if the taking is the result of an honest mistake as to the true ownership of the mine, and the taking is not a willful trespass, then the measure of damages is the value of the coal as it was in the mine before it was disturbed, and not its value when dug out and delivered at the mouth of the mine, if the trespass be an innocent one. If it be a willful one, then the measure of damages is the value of the coal at the mouth of the mine, without any allowance made for the expense and cost of getting it out."

We can conceive of nothing in these illustrations which could possibly prove prejudicial to the defendant.

[2] 3. Did the court err in refusing to instruct peremptorily against the higher damages for a willful trespass, except as to the 1,230 tons taken subsequently to July, 1910? To justify a court in withdrawing an issue from the jury, it must appear that, giving the evidence the strongest probative force against the party asking for the withdrawal, there was no substantial evidence which would warrant a jury in finding that issue against him. It is only when all reasonable men, in the honest exercise of a fair and impartial judgment, would draw the same conclusion from the evidence on that issue, that it is the duty of the court to withdraw it from the jury. Railroad Company v. Pollard, 22 Wall. 341, 22 L. Ed. 877; Grand Trunk R. R. Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Texas & Pacific R. R. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; St. Louis, etc., R. R. Co. v. Leftwich, 117 Fed. 127, 129, 54 C. C. A. 1, 3; Chicago, etc., Ry. Co. v. Roddy, 131 Fed. 712, 717, 65 C. C. A. 470, 475; Insurance Company v. Hoover Distilling Co., 182 Fed. 590, 598, 105 C. C. A. 128, 136, 31 L. R. A. (N. S.) 873.

[3] Applying this rule, an examination of the evidence, which is very voluminous, shows that the court did not err in submitting that issue to the jury.

The claim of the defendant was that it acted in good faith, believing that the vein discovered was the apex of one of the veins belonging to its mine. The apex was supposed to be north of the Waters claim head line in a gap between the Waters and Caruthers claims, which, it was claimed by the defendant, was between 27 and 28 feet wide, and that it was in ignorance of the trespass complained of until July, 1910; that after the discovery of this vein the defendant located a claim to what is called the Winner claim; the original location certificate being filed November 20, 1907. On November 11, 1908, an amended location certificate was filed for this claim. The first certificate of location was, according to the testimony of Mr. Chase, the consulting engineer and manager of the Liberty Bell mine, 125 feet beyond the line it ought to be, and into the territory of the Waters

claim, while the amended location certificate goes much farther into the territory of the Waters claim. In July, 1908, more than four months before the amended location certificate was filed and executed, the defendant invaded the Waters territory and removed ore therefrom, and more than 100 feet into the Waters claim had been opened up by the defendant before the first location certificate was filed. The vein was discovered between 1,300 and 1,400 feet below the surface, but no effort was made by the defendant to locate the lines and ascertain whether it was a part of the Waters claim, except by estimates made below the surface.

In November, 1909, more than a year after the defendant had invaded the Waters territory and had been taking ore therefrom, Mr. Chase approached Mr. Adams, the plaintiff's attorney, and proposed an exchange of other property owned by the defendant for that part of the Waters claim invaded by it. Mr. Adams testified that Mr. Chase at that time told him that the defendant was not mining on the Waters claim, pointing out to him on a map of his mines the place they had reached, which was west of the Waters claim. At that time none of the officers of the plaintiff knew that the defendant was then, and had been for more than a year, taking ore from their Waters claim, and not until almost a year later did they for the first time learn of the trespass. In September, 1910, Mr. Holland, a mining engineer in the employ of the plaintiff, visited the defendant's mine for the purpose of making an examination in relation to the proposed exchange of claims. He was accompanied through the mine by Mr. Staver, the defendant's superintendent, who showed him a stope map of the defendant's property, which did not indicate the lines of the Waters lode, nor did Mr. Staver mention to him the fact that his company was then, and had been for over two years, mining under the surface of the Waters claim, although at the trial it was admitted that in July, 1910, the defendant knew that it was trespassing on the Waters claim, and was liable as a willful trespasser for the ore removed in July, 1910, and thereafter, amounting to 1,231 tons. Before that time Mr. Chase had told Mr. Holland that they were near the Waters line, which statement Mr. Chase admitted he had made. In a letter dated November 7, 1909, Mr. Chase proposed to Mr. Wells, the president of the plaintiff company, an exchange of territory, but did not intimate that his company was then extracting ore from the territory of the Waters claim, which it wanted to obtain by the exchange. The gap between the Waters and Caruthers claims, which Mr. Chase had testified was between 26 and 28 feet wide, he admitted was, according to actual measurement, only about half that width. He also admitted that, without informing plaintiff of their intention, they had entered the Waters claim, and ran an upraise up into the strip, and terminated it beyond the strip. In his annual reports to the directors of the defendant, made during the time these trespasses were committed, Mr. Chase submitted maps showing the operations of the mine; but these maps, it was testified by Mr. Hills, an experienced mining engineer, who had examined them carefully, failed to show that the defendant was operating on the Waters claim, and were misleading in that respect, there being no indication

on these maps that any work was done by the defendant except in the Liberty Bell vein.

There was a great mass of evidence introduced, which we have carefully analyzed, and which it would serve no useful purpose to set out in this opinion. Assuming that Mr. Chase's testimony tended to establish the fact that he did not know that he was taking ore from the Waters claim, it also appears from his testimony that no efforts whatever were made by him to ascertain that fact, although he must have known that he was removing ore from the plaintiff's claim, or was working so closely along the line dividing the claims of plaintiff and defendant that he should, in the exercise of reasonable diligence, have investigated the matter, and, had he done so, would have discovered that he was trespassing on plaintiff's claim. These facts, taken in connection with the apparent evasions and misrepresentations claimed to have been made by this and other officers of the defendant to the plaintiff's attorney and officers, are sufficient to justify the submission to the jury the question whether the trespass was willful and intentional, or so reckless as to justify the jury in finding that it was willful and intentional, within the rule of law established by the authorities hereinbefore cited. It would be unreasonable for us to hold that the evidence in this case is of such a nature that all reasonable men, in the exercise of a fair and impartial judgment, would draw the conclusion that the trespass by the defendant was unintentional. The verdict of the jury negatives this contention.

[4] 4. Did the court err in its charge that the burden of proof is upon the defendant to show that the trespass was not willful or intentional? The court charged the jury upon this point as follows:

"The mere taking and converting to one's own use of the property of another constitutes, as already said, a trespass, and raises a legal presumption that the taker intended to do what he did do, and is thereby an intentional trespasser. In that event, and in the absence of any further evidence, the owner of the property taken would be entitled to · a verdict fixed in amount by the higher measure of damages based upon said legal presumption. The law, therefore, places the trespasser under the burden of overthrowing, by proof, this presumption; that is, that the trespass was not willful and intentional. If the evidence introduced by the defendant in this case for that purpose creates a belief in your minds of the defendant's innocence and good faith in taking and converting the ores, then you should not find a verdict against the defendant based on the higher measure of damages, unless the persuasive force of that evidence showing such innocence and good faith is overcome by other substantial proof, facts or circumstances in the case, convincing you either that the defendant took the ores knowing at the time they were the property of the plaintiff, or at the time it took them acted in so doing in willful and reckless disregard as to whether they were its ores or the property of another."

The court refused to give the following instruction asked by the defendant:·

"The burden of proof, which is under certain circumstances thrown upon a trespasser to show that his trespass was not willful and intentional, must not be confused with the question of the preponderance of evidence. If to sustain his burden he introduces evidence tending to show that his trespass was not willful or intentional, it then rests upon the owner to satisfy you by a preponderance of the evidence that it was willful or intentional."

It will be noticed that the instruction asked by the defendant recognizes the rule that, the trespass having been proven, the burden of proof is upon the trespasser to show that his trespass was not willful and intentional, but it proceeds:

"If to sustain his burden he introduces evidence tending to show that his trespass was not willful or intentional, it then rests upon the owner to satisfy you by a preponderance of the evidence that it was willful or intentional."

While this is the correct rule of law in criminal cases, it does not apply to civil actions of this nature. In every civil cause the burden of proof is upon the party who holds the affirmative, or, as it is sometimes stated, upon the party against whom judgment must go if no evidence is introduced in his behalf. The party upon whom the burden of proof rests must establish it by a preponderance of the evidence, regardless of the fact whether it is the basis of the cause of action set out in the complaint, or set up as a defense in the answer. Simonton v. Winter, 5 Pet. 141, 8 L. Ed. 75; Clements v. Nicholson, 6 Wall. 299, 18 L. Ed. 786; Selma, etc., R. R. Co. v. United States, 139 U. S. 560, 567, 11 Sup. Ct. 638, 35 L. Ed. 266. Upon this ground it is uniformly held that in an action for damages for a personal injury, if contributory negligence is pleaded as a defense, the burden of proof is upon the defendant, and he must establish it by a preponderance of the evidence. Texas & Pacific R. R. Co. v. Volk, 151 U. S. 73, 78, 14 Sup. Ct. 239, 38 L. Ed. 78; Inland & Seaboard Co. v. Tolson, 139 U. S. 551, 557, 11 Sup. Ct. 653, 35 L. Ed. 270; Missouri, K. & T. Ry. Co. v. Wilhoit, 160 Fed. 440, 443, 87 C. C. A. 401, 404; City of Winona v. Botzet, 169 Fed. 321, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204; Western Real Estate Trustees v. Hughes, 172 Fed. 206, 96 C. C. A. 658.

In Lesser Cotton Company v. St. Louis, etc., Ry. Co., 114 Fed. 133, 139, 52 C. C. A. 95, 101, which was an action for a loss sustained by fire alleged to have been negligently caused by sparks from defendant's locomotive, the trial court charged the jury:

"If you determine that the fire which destroyed the cotton of the Lesser Cotton Company was caused from sparks and cinders communicated from the defendant's engine, then the burden of proof is shifted upon the defendant, and it must overcome the presumption of negligence arising from this fire. * * * In other words, it must prove by a preponderance of the evidence that there was no negligence within the definition of the term as I have described it to you."

This charge was approved by this court.

In Rutherford v. Foster, 125 Fed. 187, 194, 60 C. C. A. 129, 136, which was an action to recover damages for a wrongful killing by the defendant, the trial judge charged the jury that the presumption of law from the admitted killing was that it was wrongful, and the burden is upon the defendant to show by a fair preponderance of the evidence facts and circumstances constituting a justification of the act. This charge was approved by this court, quoting from the opinion of Chief. Justice Shaw in Powers v. Russell, 13 Pick. 69, 77.

As to the shifting of the burden of proof, the same rule has been applied in timber trespass cases. Northern Pacific R. R. Co. v. Lewis, 162 U. S. 366, 377, 16 Sup. Ct. 831, 40 L. Ed. 1002; United States v. Denver & R. G. R. R. Co., 191 U. S. 84, 92, 24 Sup. Ct. 33, 48 L. Ed.

106; Ghost v. United States, 168 Fed. 841, 848, 94 C. C. A. 253, 260. In United States v. Ute Coal & Coke Company, 158 Fed. 20, 23, 85 C. C. A. 302, which was an action for trespass in taking coal from public lands, Judge Sanborn, speaking for this court, said:

"There is a legal presumption that one who takes and converts to his own use the property of another, intends so to do, and a jury may lawfully infer from such taking and conversion and the wrongdoer's reckless disregard of the owner's right and title that he had knowledge of that right and title, and intended to appropriate his property to his own use, in the absence of persuasive evidence of his innocence and good faith."

Nor do the authorities sustain the contention of counsel for defendant that this rule does not apply to a trespass of metalliferous ores. In Keely v. Ophir, etc., Mining Co., 169 Fed. 601, 603, 95 C. C. A. 101, the same rule was applied to a trespass of a mine containing precious metals, and that case is cited with approval and followed in Backer v. Penn Lubricating Co., 162 Fed. 627, 631, 89 C. C. A. 419, 423.

It is true, as claimed by counsel for defendant, that there are some cases in which it has been held that prima facie presumptions do not always shift the burden of proof to the extent that a preponderance of the evidence is required to remove it; but a careful analysis of the cases cited in their brief will show that they apply only to cases where the prima facie case rested solely upon artificial presumptions. Thus, without any evidence, the law presumes sanity, regularity of official acts, innocence, honesty, natural love and affection between parent and child and husband and wife, love of life and avoidance of known danger, death after an unexplained disappearance for more than seven years, and many others which it is unnecessary to mention. This is not the case here. A trespass on the property of another, in the absence of any other proof, is naturally presumed to be willful and intentional as a fact, and the proof that it is not so is generally, and clearly in this case, solely in the possession of the trespasser, as he alone knows the reasons and intent which induced him to commit the trespass. The rule as stated in United States v. Denver & R. G. R. R. Co., supra, controls this court. It is:

"It is a general rule of evidence, noticed by the elementary writers upon that subject (1 Greenleaf on Evidence, § 79), 'that where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party.' When a negative is averred in pleading, or the plaintiff's case depends upon the establishment of a negative, and the means of proving a fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must, from the nature of the case itself, be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party which is in possession of the proof should be required to adduce it, or, upon his failure to do so, we must presume it does not exist, which of itself establishes a negative."

In Home Benefit Association v. Sargent, 142 U. S. 691, 700, 12 Sup. Ct. 332, 336 (35 L. Ed. 1160), it was held:

"The defendant having alleged in its answer that Hall's death was due to one of the causes excepted from the operation of the policy, it was not error

for the court to charge the jury that the defendant was bound to establish such defense by evidence outweighing that of plaintiff."

In Banbury Peerage Case, 1 Sim. & St. 153, 2 Salk, 512, 2 Ld. Raym. 1247, Chief Justice Mansfield informed the House of Lords:

"That in every case in which there is prima facie evidence of any right existing in any person, the onus probandi is always upon the person or party calling such right in question."

Counsel for defendant overlook the distinction between presumptions of law, founded on reasons of public policy or social convenience, and a presumption of fact, which enlightened common sense and experience may draw from the acts of the parties as established by the evidence, and the natural result flowing therefrom. In the latter case, as shown by the authorities hereinbefore cited, the burden of proof, or the burden of evidence, as it would perhaps be more proper to designate it, is shifted to the party upon whom the burden to remove the presumption arising from the evidence rests, and it must be by a preponderance of the evidence. These latter presumptions most frequently arise when, owing to the peculiar circumstances of the case, the complaining party has neither the means at his command, nor the means of obtaining them, to prove by direct evidence a certain fact, while the adversary has them. Therefore, for the furtherance of right and justice, the law permits an inference of an existing fact, arising from the facts established by the evidence. An action for a willful and intentional trespass is clearly such a case, in so far as it is necessary to establish the willful and wrongful intent.

It is also claimed that the court erred in refusing to give instruction No. 7, asked by the defendant. This instruction is as follows:

"In a case where extralateral rights to ore exist, or may exist, as here, and where the situation is such that the ore taken may with reasonable probability be found to be from a vein apexing on the territory of the taker, and it is impossible or a matter of great difficulty and expense to determine in advance of its taking the exact facts, then, unless you are satisfied by a preponderance of evidence that as a matter of fact the taker did intend to take what was not his, you must find that the taking was not willful."

But the court in its charge fully explained to the jury the law on that subject. It said:

"The law has established a presumption that all ore found under the surface of a mining claim belongs to the owner of that claim, and unless the person who may have taken the ore from under the claim of another can show to the satisfaction of the jury that the ore was a part of a vein having its top or apex in his claim, and so situated that he is entitled in law to follow such vein on its dip, he is a trespasser, and is accountable to the owner of the surface for the ore taken. By the term 'top' or 'apex' of a vein is meant the highest part of a vein along its course."

This sufficiently explained to the jury the extralateral rights of the parties. It told them in plain words that, while there was a presumption that all the ore within the side and end lines of the Waters claim belonged to the plaintiff, yet if the apex of a vein was outside the Waters claim, and within the boundaries of defendant's claim, that the defendant had a right to follow such vein and remove the ore therefrom, notwithstanding such vein should extend within the bound-

aries of the Waters claim, but that the burden of proof was upon the defendant to establish that the apex of the vein was within the boundaries of defendant's claim.

[5] 5. Did the court err in its charge relating to the measure of damages in case of willful trespass? The parts of the charge excepted to by the defendant in its assignments of error are:

"A large amount of testimony has been introduced relative to the cost of mining, transporting, and treating the ores taken from the trespassed workings. Should you find that the defendant was a willful, intentional, or reckless trespasser as herein defined, and therefore is answerable for the higher measure of damages referred to in these instructions, then all of such testimony as to cost becomes immaterial, because in that event the plaintiff is entitled to recover the full amount realized by defendant from the conversion of the ores to its own use, regardless of the expenditures incurred by it in so doing.

"In the event you are called upon to determine such cost, you must consider solely the cost to defendant of mining, transporting, treating, and converting into money the particular ores in question. The defendant is not entitled to deduct any portion of a general expense incurred by it in its mine operations, not attributable to the particular ores in question, and which it would have incurred, had it not mined any of these ores, but had confined itself to the mining, transporting and treatment of the remaining ores extracted from its own territory during the period in controversy. For example, all fixed charges, salaries of officers and employés, expenses of constructing, developing, or maintaining any portion of defendant's mine, mill, or plant, not incurred in or by reason of the extraction or treatment of the ores in controversy, are not to be considered, even though you may believe that by reason of the expense so incurred the cost of producing the particular ores in question may have been reduced. And in considering any testimony introduced at the trial, oral or documentary, relative to such costs, you must eliminate all items of the character above indicated, and you must also consider the reliability and accuracy of the data or records upon which such testimony is based."

The special instructions, asked by the defendant, and refused by the court, were:

"In case of trespass and conversion of ore, as it is called, the law recognizes two methods of measuring the damage to the owner. The first is in case of unintentional or inadvertent trespass, in which case the damages are compensatory merely, the measure being the value of the ore unbroken in the mine; in other words, after ascertaining the gross value of the ore, there is deducted from it all the costs of mining, hoisting, transportation, treatment, etc., so as to arrive at the net value realized. The second measure of damages is in case of a willful or an intentional trespass under such circumstances as to show an intentional taking of the property of another, or such a willful or reckless disregard of the rights of another as to warrant the inference of such intent; in which case the damages are punitive, the measure being the value of the ore, not unbroken in the ground, but at the mouth of the pit or shaft or tunnel, without allowance to the trespasser for the cost incurred in mining and getting it to that point. In other words, the value which the ore might have had unbroken in the mine to the owner or trespasser is enhanced by the cost of mining and raising it, at the expense of the trespasser and for the benefit of the owner."

These assignments of error raise the question whether, in case of a willful trespass, when the raw material converted has been enhanced in value by the labor of the willful trespasser, the measure of damages is the value of the material before it was changed into the finished article or after it has been manufactured.

In Woodenware Company v. United States, 106 U. S. 432, 434, 1 Sup. Ct. 398, 27 L. Ed. 230, the English rule that in such a case no allowance whatever in respect to what the willful trespasser has done or expended will be allowed was adopted, and has been followed ever since by all the national courts, and especially this court. Pine River Logging Co. v. United States, 186 U. S. 279, 294, 22 Sup. Ct. 920, 46 L. Ed. 1164; United States v. St. Anthony R. R. Co., 192 U. S. 524, 542, 24 Sup. Ct. 333, 48 L. Ed. 548; Durant Mining Co. v. Percy Consolidated Mining Co., supra; United States v. Ute C. & C. Co., supra; United States v. Homestake Mining Co., 117 Fed. 481, 54 C. C. A. 303; Resurrection Gold Mining Co. v. Fortune Gold Mining Co., supra; Central Coal & Coke Co. v. Penny, supra; St. Louis Stave & Lbr. Co. v. United States, 177 Fed. 178, 181, 100 C. C. A. 640, 643.

In United States v. Waters-Pierce Oil Co., 196 Fed. 767, 116 C. C. A. 391, the government sought to recover the value of turpentine and resin, the product of the sap of long-leaf yellow pine trees growing on the public lands in Alabama. The trespasser had tapped certain trees and taken therefrom the crude gum and sold it to a turpentine distiller. The distiller, after distilling and rectifying the gum, sold it to the defendant, and it was held by this court that the action for the value of the distilled product would lie against the Oil Company, reversing the lower court, which had held (180 Fed. 309, 312) that, the gum having been converted into turpentine and resin when the Oil Company purchased it, it was not liable.

In Parish v. United States, 184 Fed. 590, 106 C. C. A. 570, the government, as in the Waters-Pierce Oil Company Case, sued the trespasser and his vendees for the value of the distilled turpentine and resin into which the gum, taken unlawfully by a homesteader from trees on the public lands, had been converted, and the following charge of the trial court was on error approved by the Circuit Court of Appeals for the Fifth Circuit:

"That Wyatt S. Parish was in law a willful trespasser in extracting gum from his homestead, and for that reason the defendants are liable for the value of the spirits of turpentine and resin manufactured from the gum, and not merely for the value of the crude gum; that the jury should find for the plaintiff the value of the spirits of turpentine and resin manufactured by defendant W. L. Parish from the gum purchased by him from Wyatt S. Parish, who extracted it from trees upon his homestead."

The owner in a case of an intentional trespass is not confined merely to recovering the value of the property, but may pursue and reclaim the property wherever he can find and identify it. Stephenson v. Little, 10 Mich. 433; 2 Schouler's Personal Prop. p. 21. As stated by Judge Thayer, delivering the opinion of this court in United States v. Price Trading Co., 109 Fed. 239, 244, 48 C. C. A. 331, 335.

"The cutting, removal, and sale of the timber, if wrongful, did not divest the government of its title, but, at most, merely changed what had before been realty into personalty, without affecting the owner's title to the property in any respect."

In that case the timber had been converted into fence posts, and the action was for the recovery of the value of these posts. If the prop-

erty can be found, no matter how it has been changed, provided it can be identified, replevin will lie. Schulenberg v. Harriman, 21 Wall. 44, 64, 22 L. Ed. 551; Bly v. United States, 4 Dill. 464, Fed. Cas. No. 1,581; Stotts v. Brookfield, 55 Ark. 307, 310, 18 S. W. 179.

[6] Whether the court committed error in failing to charge the jury to make allowance for the tailings lost or percentage not recovered in treatment is not properly before us. The court's attention was not called to this omission by any exception, nor were there any correct special instructions asked by the defendant on that point. Texas & Pacific Ry. Co. v. Humble, 181 U. S. 57, 67, 21 Sup. Ct. 526, 45 L. Ed. 747; Southern Pacific Ry. Co. v. Maloney, 136 Fed. 171, 69 C. C. A. 83; United States Smelting Co. v. Parry, 166 Fed. 407, 416, 92 C. C. A. 159, 167.

The only instructions in which this point was raised by the defendant are in its requests marked Nos. 12 and 13. No. 12 was expressly limited to a nonintentional trespass. That instruction reads:

"After first finding the tonnage and gross assay value of the ore in place and unbroken in the mine, taken by defendant which belonged to the plaintiff, you will, unless you find the trespass to have been willful and intentional, deduct from the value of each ton of ore so taken the cost of mining, transporting, milling, and marketing said ore, and make allowance for the tailings lost or percentage not recovered in treatment. * * *"

Instruction No. 13 requested the court to instruct the jury, if they found the taking was willful and intentional, to allow only the value of the ore at the mouth of the mine and deduct "from that time on the cost of tramming to the mill, marketing, and tailings lost." But to have given this instruction the court would have also limited the damages, in case of a willful trespass, to the value of the ore at the mouth of the mine, which we hold is not the law. It is well settled that when a request for an instruction contains two or more propositions of law, if one of them is unsound, and the others are good (which we do not decide in this case), it is not error to refuse the entire instruction. United States v. Hough, 103 U. S. 71, 73, 26 L. Ed. 305; Union Ins. Co. v. Smith, 124 U. S. 405, 424, 8 Sup. Ct. 534, 31 L. Ed. 497; Texas & Pacific Ry. Co. v. Humble, 181 U. S. 57, 67, 21 Sup. Ct. 526, 45 L. Ed. 747; Chicago, etc., R. R. Co. v. Roddy, 131 Fed. 712, 718, 65 C. C. A. 470, 476; Armour & Co. v. Kollmeyer, 161 Fed. 78, 84, 88 C. C. A. 244, 248, 16 L. R. A. (N. S.) 1110.

6. Alleged errors in admission and exclusion of evidence.

[7] There were quite a number of exceptions taken during the trial to the admission and rejection of evidence, which are now assigned as error. It is claimed that it was error to admit in evidence a patent plat of the Esparanza and Eldorado lodes. This plat had been made by the defendant in 1906, before it had trespassed on plaintiff's claim. It shows the lines of the Waters and Caruthers claims owned by the plaintiff, with which the Esparanza conflicted. The defendant having contended that when the trespass was committed it believed the gap between those claims to be 27 or 28 feet wide, and Mr. Chase having testified to that effect, the court committed no error in admitting, in rebuttal, the patent plat prepared by the defendant, which showed that the gap was only half that width, and that Mr. Chase knew of this

plat and had posted it himself some time before the trespass began. It was not only some evidence from which the jury might infer that Mr. Chase knew that he was trespassing upon plaintiff's claim, but it also had a tendency to affect his credibility.

[8] The admission of the plat, Plaintiff's Exhibit N, showing the relative positions of the Waters and Caruthers claims and defendant's Winner claim, was also objected to. This map was admitted by Mr. Chase to be correct. It tended to explain to the jury the location of these claims, and threw some light on the question whether the defendant proceeded in reckless disregard of the rights of the plaintiff. In cases of this nature, where the question of intent is of great importance, the courts are much more liberal in the admission of evidence.

The exclusion by the court of statements offered by the defendant showing the average value per ton of all ore taken from the Liberty Bell mine prior to, during, and after the trespass, was proper. These statements were prepared from the annual reports of the directors and stockholders of the defendant company. The object of this proof, as stated by counsel, at the time it was offered in the lower court, was to show that the average value of the ore during the period of the trespass was lower than before or after the trespass, and therefore the ore taken from the plaintiff must have been of an inferior grade. In response to the question by the court whence the ore was taken before, counsel for defendant replied: "The main Liberty Bell vein." After some testimony had been introduced in an attempt to lay the foundation for the introduction of these statements, and the fact had been established that different veins in the same mine carry different values, and that ores taken from the same mine, but at different times, vary materially in value, the court excluded the statements offered upon the following grounds:

"Now, with your concession, and we all know, I take it, that that is true, that different chutes in the same mine may be greatly different in their average value. When you enter upon that inquiry, it seems to me that you necessarily open up as a collateral question the further inquiry as to the apparent value on the different chutes in the Liberty Bell vein, those that were being mined prior to the taking of any ore at all from this Winner vein. Those that had been mined before the Winner vein was reached may have been high in value, higher than the average of those mined after the Winner vein was reached, or they may have been greatly lower; and it seems to me that we cannot possibly determine this inquiry which you put to this witness now, without necessarily introducing into the case the collateral inquiry in going all over the question of value of these chutes in the Liberty Bell vein mined prior to the Winner vein entry, in order to determine whether or not the conclusions of the witness are properly founded, and on that the plaintiff may not be prepared, if it is wholly collateral, so much so that they could not anticipate, and were not charged with anticipating, that you would introduce that collateral fact."

For the reasons stated by the learned trial judge, there was no error in excluding these statements.

There are some other exceptions, which have been carefully examined and found unobjectionable.

In view of the large verdict in this case, and the very able and earnest argument of counsel, we have given this case our most careful con-

sideration. We have considered every one of the numerous assignments of error, examined carefully the many authorities which the industry of learned counsel for both parties enabled them to cite, and have also examined others not found in the briefs of counsel, and find no prejudicial error in the record.- Considering the length of time it took to try this case in the court below, the many objections made by the very able counsel who appeared for the parties, and the important questions of law involved, the record is as free from error as any record of this magnitude can be. The evidence was conflicting as to whether the trespass was willful and intentional or inadvertent, and while a finding in favor of the defendant on that issue might have been made by the jury, which we would not have disturbed, there was ample evidence to justify the findings made. When there is substantial evidence to warrant a verdict either way, the finding of the jury is conclusive in the appellate court.

The judgment is affirmed.